NAWROCKI v MACOMB COUNTY ROAD COMMISSION

EVENS v SHIAWASSEE COUNTY ROAD COMMISSIONERS

Docket Nos. 107903, 109921. Argued December 7, 1999 (Calendar Nos. 8-9). Decided July 28, 2000.

Rachel Nawrocki and Lawrence Nawrocki brought an action in the Macomb Circuit Court against the Macomb County Road Commission for injuries suffered by Rachel Nawrocki as a pedestrian allegedly as a result of the commission's failure to maintain a road within its jurisdiction in reasonable repair and in a condition safe and convenient for public travel. The court, Lido V. Bucci, J., granted summary disposition for the commission on the ground that pedestrians are covered by the highway exception to governmental immunity only when their injuries result from vehicular accidents. The Court of Appeals, SMOLENSKI and R. R. LAMB, JJ. (WHITE, P.J., concurring), affirmed in an unpublished opinion per curiam (Docket No. 181350). The plaintiffs appeal.

Brian Evens brought an action in the Shiawassee Circuit Court against the Shiawassee County Road Commission for injuries suffered allegedly as a result of the commission's failure to maintain an intersection within its jurisdiction in reasonable repair and in a condition safe and convenient for public travel. Specifically, he maintained that the commission owed him a duty to install additional stop signs or traffic signals at the intersection. The court, Gerald D. Lostracco, J., granted summary disposition for the commission, holding that it could not be liable for a failure to install traffic signs, and specifically rejected the commission's intervening negligence claim. After the Supreme Court released *Pick v Szymczak*, 451 Mich 607 (1996), which held that governmental agencies had a duty to provide traffic control devices or warning signs at points of special hazard, the Court of Appeals, JANSEN, P.J., and SAAD and M. D. SCHWARTZ, JJ., reversed the judgment of the circuit court in part in an unpublished opinion per curiam, relying on *Pick*, and remanded the case to the circuit court with instructions to determine whether the intersection at issue was a point of special hazard. It affirmed the denial of the commission's motion on the intervening negligence issue (Docket No. 186253).

In an opinion by Justice MARKMAN, joined by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, and YOUNG, the Supreme Court *held*:

A pedestrian is entitled to the protections of the highway exception to governmental immunity, the same as all other persons, when injuries are proximately caused by the defendant's failure to repair and maintain the improved portion of the highway designed for vehicular travel so that it is reasonably safe and convenient for public travel. The state or county road commissions have no duty, under the highway exception to governmental immunity, to install, maintain, repair, or improve traffic control devices, including traffic signs. Rather, the state and county road commissions' duty, the breach of which invokes the highway exception, is limited exclusively to dangerous or defective conditions within the actual roadway, paved or unpaved, designed for vehicular travel.

1. Governmental immunity from tort liability, as provided by MCL 691.1407; MSA 3.996(107), is expressed in the broadest possible language—it extends immunity to all governmental agencies for all tort liability whenever they are engaged in the exercise or discharge of a governmental function. Statutory exceptions to this broad immunity are to be narrowly construed; only those duties enumerated within the statutorily created exceptions are legally compensable if breached. The highway exception waives the absolute immunity of governmental units with regard to defective highways under their jurisdiction. However, MCL 691.1402; MSA 3.996(102) specifically reduced the purview of the highway exception from the broad approach previously taken. Because subsection 1402(1) is a narrowly drawn exception to a broad grant of immunity, there must be strict compliance with the conditions and restrictions of the statute.

2. The first sentence of the highway exception clause describes the basic duty imposed on all governmental agencies, including the state, having jurisdiction over any highway: to maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. This sentence establishes the duty to keep the highway in reasonable repair. The second sentence describes those persons who may generally recover damages when injured by a breach of the duty created by the first sentence. The third sentence specifically addresses the duty and resulting liability of county road commissions. The fourth sentence, specifically applicable to the state and county road commissions, narrowly limits the general duty to repair and maintain, created by the first sentence, only to the improved portion of the highway designed for vehicular travel. The fourth sentence expressly provides that the limited duty

does not extend to sidewalks, crosswalks, or any other installation outside the improved portion of the highway designed for vehicular travel. The plain language of this sentence definitively limits the state and county road commissions' duty with respect to the location of the alleged dangerous or defective condition; if the condition is not located in the actual roadbed designed for vehicular travel, the narrowly drawn highway exception is inapplicable and liability does not attach.

3. The statutory language of the highway exception imposes a duty on the state and county road commissions to protect pedestrians from dangerous or defective conditions in the improved portion of the highway designed for vehicular travel, even when injury does not arise as a result of a vehicular accident. Pedestrian plaintiffs may plead in avoidance of governmental immunity, with regard to the state or a county road commission, in claims for personal injuries and property damage, the same as all other persons, when the injury or damage is proximately caused by a failure of the state or county road commission to carry out its duty to repair and maintain the narrowly defined location prescribed by the fourth sentence of the statutory clause, the improved portion of the highway designed for vehicular travel, not otherwise excluded.

4. While the first sentence of the statutory clause establishes a general duty to repair and maintain highways so that they are reasonably safe and convenient for public travel, this duty, with regard to the state and county road commissions, is significantly limited, extending only to the improved portion of the highway designed for vehicular travel. The highway exception does not contemplate conditions arising from points of hazard, areas of special danger, or integral parts of the highway, outside the actual roadbed, paved or unpaved, designed for vehicular travel.

5. In *Nawrocki*, the circuit court erred in granting summary disposition for the MCRC. By alleging that she was injured by a dangerous or defective condition of the improved portion of the highway designed for vehicular travel, and not a sidewalk, crosswalk, or any other installation outside the improved portion of the highway designed for vehicular travel, the plaintiff pleaded in avoidance of governmental immunity, requiring reversal of the judgment of the Court of Appeals and remand to the circuit court for further proceedings. In *Evens*, because the plaintiff simply argues that the SCRC failed to install additional traffic signs or signals that might conceivably have made the intersection safer, and the highway exception to governmental immunity imposes no such duty on state or county road commissions, reversal of the decision of the

Court of Appeals and reinstatement of the trial court's grant of summary disposition for the SCRC is required. See appendix.

*Nawrocki* reversed and remanded.

*Evens* reversed.

Justice KELLY, joined by Justice CAVANAGH, concurring in part and dissenting in part, stated that in *Evens*, the majority has improperly interpreted the words "improved portion of the highway designed for vehicular travel" to include only the surface of the road. Had the Legislature so intended, it could have and, presumably, would have said "surface of the road." Further, its analysis of the phrase distorts the governmental immunity act by shifting to municipalities liability for defective traffic control devices, despite the Legislature's delegation of the duty to maintain these devices to county road commissions and to the state.

Standing alone, the phrase "improved portion of the highway designed for vehicular travel" does not specify that the improved portion of the highway designed for vehicular travel includes only the surface of the highway. Because it does not, the phrase might include traffic control devices. Beyond dispute, they constitute an improvement, inasmuch as they are placed on or above the highway by a government agency to improve vehicular travel. Vehicles do not travel solely on the two-dimensional length and width of the roadway, but in three dimensional space, and for obvious reasons, it is impossible to place traffic control devices on the roadbed that the vehicles touch while traveling. MCL 257.609(a); MSA 9.2309(a) and MCL 257.610(a); MSA 9.2310(a) support the conclusion that the Legislature envisioned traffic control devices as being an integral part of the highway itself. Use in the statutes of the word "upon" indicates that traffic control devices are on, not off highways. Thus, it appears that they were intended to become a part of the highway itself.

The highway exception of the governmental immunity act places a general duty on each governmental agency having jurisdiction over a highway to maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Liability not only extends to highways in a state of disrepair, but to those in a condition not reasonably safe and fit for travel. The second sentence of MCL 691.1402(1); MSA 3.996(102)(1) expressly provides that persons who are injured because a government agency failed to keep a highway in reasonable repair and in a condition reasonably safe and fit for travel may recover damages from that agency. It is illogical to conclude that the Legislature would impose liability where there is no duty. The majority violates principles of statutory construction by reading the first sentence of highway exception,

but ignoring the second, thereby rendering meaningless the Legislature's intent to allow damages to those injured when a government agency fails to keep a highway under its jurisdiction reasonably safe for public travel.

Keeping a highway in a condition reasonably safe for public travel includes maintaining traffic control devices in working order. Under MCL 691.1401(e); MSA 3.996(101)(e) "highway" is defined as a public highway, road or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts in the highway. The term does not include alleys, trees and utility poles. Notably, the statute does not exclude traffic control devices. The majority usurps the Legislature's role by adding traffic control devices to the list of exclusions. MCL 691.1402(1); MSA 3.996(102)(1) relieves county road commissions and the state from liability for installations outside the improved portions of the highway, but MCL 691.1402a(1); MSA 3.996(102a)(1) places liability for injuries suffered as a result of defects in such installations on municipal corporations. Because defective traffic control devices make highways hazardous for vehicular traffic, it is logical to conclude that they were intended to be included in the duty to maintain highways in a condition reasonably safe for public travel. The majority, however, has decided that traffic control devices are located outside the improved portions of roads, thus shifting liability for defective control devices to municipal corporations. The conclusion is illogical, particularly when county road commissions and the state have the duty to place and maintain traffic control devices on highways.

*Berger, Miller & Strager, P.C.* (by *Allen S. Miller*), for the plaintiffs-appellants in *Nawrocki*.

*Miller, Shpiece & Andrews, P.C.* (by *Wayne J. Miller, Michael R. Shpiece*, and *Daniel J. Cherrin*), for the plaintiff-appellee in *Evens*.

*Peterson, Hay & Comsa, P.C.* (by *John M. Ketzler* and *William L. Hay*), for the defendant-appellee in *Nawrocki*.

*Highland & Zanetti, P.C.* (by *R. Michael John*), for the defendant-appellant in *Evens*.

Amicus Curiae:

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Brenda E. Turner*, Assistant Attorney General, for Michigan Department of Transportation.

MARKMAN, J.

## I. INTRODUCTION

In these consolidated cases, we granted leave to once again consider the scope of the so-called "highway exception" to governmental immunity. MCL 691.1402(1); MSA 3.996(102)(1). Specifically, we must decide the extent, if any, to which the highway exception accords protection to pedestrians injured by a condition within the improved portion of the highway designed for vehicular travel. Further, we must decide whether the highway exception creates a duty, with regard to the state and county road commissions, to install, maintain, repair, or improve traffic control devices, including traffic signs.[1]

In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), this Court confronted and resolved conflicting case law defining the scope of governmental immunity. The *Ross* Court explained its goals in tackling the issue, and its approach, stating:

> In resolving the questions presented by this [governmental immunity] act, our goal has been to create a cohesive, uniform, and workable set of rules which will readily define the injured party's rights and the governmental agency's lia-

---

[1] The liability of the state and county road commissions is, of course, properly understood as the liability of state taxpayers, because the state and its various subdivisions have no revenue to pay civil judgments, except that revenue raised from the taxpayers.

bility. We recognize that our case law on these questions is confused, often irreconcilable, and of little guidance to the bench and bar. We have made great efforts to reexamine our prior collective and individual views on this subject in order to formulate an approach which is faithful to the statutory language and legislative intent. Wherever possible and necessary, we have reaffirmed our prior decisions. The consensus which our efforts produce today should not be viewed as this Court's individual or collective determinations of what would be most fair or just or the best public policy. The consensus does reflect, however, what we believe the Legislature intended the law to be in this area. [*Id.* at 596.]

*Ross*, constituting a significant change in governmental immunity jurisprudence,[2] held that the immunity conferred on governmental agencies is *broad*, with *narrowly* drawn exceptions. *Id.* at 618. The failure to consistently follow *Ross*, specifically with regard to the interpretation and application of the highway exception, has precipitated an exhausting line of confusing and contradictory decisions. These decisions have created a rule of law that is virtually impenetrable, even to the most experienced judges and legal practitioners.[3] Further, these conflicting

---

[2] *Horace v City of Pontiac*, 456 Mich 744, 750, n 3; 575 NW2d 762 (1998).

[3] In *Suttles v Dep't of Transportation*, 457 Mich 635, 642-643; 578 NW2d 295 (1998), this Court recently acknowledged its prior difficulties interpreting the highway exception, stating:

We acknowledge that the notion of governmental immunity, its interpretation, and its practical application have been difficult at times, stemming in part from the decisions of this Court and from the confusing nature of the statute itself.

In the companion case to *Suttles, Brown v Dep't of Transportation*, 457 Mich 635; 578 NW2d 295 (1998), reh gtd (1998), app dis (1999), 459 Mich 1228, this Court's order granting rehearing also recognized the confusion in this area of law and demonstrated that this Court has been seeking a

decisions have provided precedent that both parties in highway liability cases may cite as authority for their opposing positions. This area of the law cries out for clarification, which we attempt to provide today.[4]

Accordingly, we return to a narrow construction of the highway exception predicated upon a close examination of the statute's plain language, rather than merely attempting to add still another layer of judicial gloss to those interpretations of the statute previously issued by this Court and the Court of Appeals. We believe that such an approach will maintain fidelity to the requirements set forth by the Legislature, while providing the lower courts with a clearer standard to follow when applying the highway exception in individual cases. However, we refuse to impose upon the people of this state our individual determinations of

---

clearer standard that properly applies the statutory language. That order provided as follows:

> The parties are directed to submit supplemental briefs addressing the following questions: (1) In order for a defect to be within the highway exception to governmental immunity, must the defect pose a hazard to vehicular travel? (2) Did the defect alleged in this case represent a hazard to vehicular travel? (3) Is a vehicular accident required for the highway exception to governmental immunity to apply? (4) Does a vehicle striking a pedestrian constitute a vehicular accident? (5) Should this Court reconsider and adopt the position expressed in the concurring and dissenting opinion of Justice WEAVER in this case, and the dissenting opinion of Justice RILEY in *Pick v Szymczak*, 451 Mich 607, 632-656 [548 NW2d 603] (1996), that the highway exception to governmental immunity does not extend to design defects, i.e., defects not within the surface of the improved portion of the highway. [*Brown, supra* at 1228.]

*Brown* was dismissed by stipulation of the parties, before this Court could resolve these questions.

[4] For the sake of assisting the bench and bar, an appendix to this opinion provides a summary of the proper legal principles to be applied in cases involving the highway exception.

proper public policy, relating to the availability of lawsuits arising from injuries on the public highways. Rather, we seek to faithfully construe and apply those stated public policy choices made by the Legislature when it drafted the statutory language of the highway exception.

Because prior decisions of this Court have improperly broadened the scope of the highway exception and provided a variety of contradictory and conflicting interpretations of this exception's statutory language, we believe it is impossible to avoid overruling some precedent, if we are to set forth a clear rule of law. While we emphasize that we do not lightly overrule existing precedent, we are duty-bound to overrule past decisions that depart from a narrow construction and application of the highway exception and the plain language of the statutory clause, especially when they directly disregard, and are inconsistent with, other decisions of this Court.

In *Nawrocki v Macomb Co Rd Comm*, we believe that the circuit court erred in granting summary disposition in favor of the governmental defendant. We hold that the highway exception applies when a plaintiff's injury is proximately caused by a dangerous or defective condition of the improved portion of the highway designed for vehicular travel. We therefore reverse the decision of the Court of Appeals, which affirmed the circuit court, and remand to the circuit court for further proceedings consistent with this opinion. In *Evens v Shiawassee Co Rd Comm'rs*, we hold that the state or county road commissions' duty, under the highway exception, does not extend to the installation, maintenance, repair, or improvement of traffic control devices, including traffic signs, but

rather is limited exclusively to dangerous or defective conditions within the improved portion of the highway designed for vehicular travel; that is, the actual roadbed, paved or unpaved, designed for vehicular travel. We therefore reverse the decision of the Court of Appeals and reinstate the circuit court's grant of summary disposition in favor of defendant road commission.

## II. FACTUAL BACKGROUND

### A. *NAWROCKI v MACOMB CO RD COMM*

On May 28, 1993, plaintiff Rachel Nawrocki was a passenger in a truck driven by her husband. He parked the truck next to the curb on Kelly Road, in Macomb County,[5] and Nawrocki exited from the passenger side onto the grass between the street curb and the sidewalk. She walked the length of the truck and stepped off the curb onto the paved roadway. Nawrocki allegedly stepped on cracked and broken pavement on the surface of Kelly Road and sustained serious injuries to her right ankle, necessitating several operations.

Nawrocki sued defendant Macomb County Road Commission,[6] arguing that it negligently failed to maintain Kelly Road in reasonable repair and in a condition safe and convenient for public travel. The MCRC moved for summary disposition under MCR

---

[5] There is no dispute that the portion of Kelly Road at issue in this case fell within the jurisdiction of the Macomb County Road Commission.

[6] To avoid confusion between defendant in this case and defendant in the consolidated case, this opinion will refer to defendant Macomb County Road Commission as the "MCRC" and to defendant Shiawassee County Road Commissioners as the "SCRC."

2.116(C)(7) and (8), arguing that Nawrocki's claim was barred by governmental immunity because the highway exception did not apply to pedestrians. The circuit court initially denied the motion, relying on *Gregg v State Hwy Dep't*, 435 Mich 307; 458 NW2d 619 (1990), for the proposition that pedestrians traveling on the improved portion of the highway designed for vehicular travel are covered by the highway exception. On the MCRC's motion for reconsideration, the circuit court granted summary disposition under MCR 2.116(C)(7), on the ground that pedestrians are covered by the highway exception only when their injuries resulted from vehicular accidents, relying on *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130, 135, n 4; 523 NW2d 791 (1994).

Nawrocki appealed as of right to the Court of Appeals, which affirmed,[7] in reliance on its previous opinion in *Suttles v Dep't of Transportation*, 216 Mich App 166; 548 NW2d 671 (1996), a case subsequently remanded by this Court for further factual findings, *Suttles v Dep't of Transportation*, 457 Mich 635; 578 NW2d 295 (1998). We granted Nawrocki's application for leave to appeal.[8]

B. *EVENS v SHIAWASSEE CO RD COMM'RS*

On May 18, 1992, plaintiff Brian Evens sustained serious injuries in an automobile accident at the intersection of Newburg Road and Byron Road in

---

[7] *Nawrocki v Macomb Co Rd Comm*, unpublished opinion per curiam, issued November 12, 1996 (Docket No. 181350).

[8] The order provided that this case be argued and submitted to the Court together with *Evens v Shiawassee Co Rd Comm'rs*. 460 Mich 867 (1999).

Shiawassee County.[9] Traffic on both northbound and southbound Byron Road was regulated by stop signs, posted on both the left and right sides of the roadway. Traffic on eastbound and westbound Newburg Road was not required to stop, but posted traffic signs warned of the approaching intersection. Both Newburg Road and Byron Road were posted with 55 MPH speed limit signs.

Evens was driving northbound on Byron Road at the time of his accident. After stopping at the stop signs, Evens entered the intersection, where he collided with a westbound car traveling on Newburg Road, which had the right of way.[10] Evens sued defendant Shiawassee County Road Commissioners, arguing that they negligently failed to maintain the intersection in reasonable repair and in a condition safe and convenient for public travel. Specifically, Evens argued that the SCRC owed him a duty to install additional stop signs or traffic signals at the intersection.[11]

The SCRC moved for summary disposition under MCR 2.116(C)(8) and (10), on two separate grounds. First, the SCRC argued that county road commissions could not be held liable for a failure to install traffic signs on the theory that signs are outside the improved portion of the highway designed for vehicular travel and are not covered by the highway exception. Second, the SCRC argued that Evens' intervening

---

[9] There is no dispute that the intersection at issue in this case fell within the jurisdiction of the Shiawassee County Road Commission.

[10] Evens testified that he retained no memory of the accident or the surrounding circumstances.

[11] However, Evens' expert witness declined to express an opinion about whether a four-way installation of stop signs or traffic signals would have prevented the accident.

negligence of failing to yield to oncoming traffic was the sole proximate cause of his accident, and that the SCRC was therefore relieved of liability. The circuit court granted summary disposition to the SCRC under MCR 2.116(C)(10), holding that the SCRC could not be liable for a failure to install traffic signs, in reliance on the Court of Appeals decision in *Pick v Gratiot Co Rd Comm*, 203 Mich App 138; 511 NW2d 694 (1993). The circuit court specifically rejected the SCRC's intervening negligence claim.

One year after the circuit court's grant of summary disposition, this Court released its opinion in *Pick v Szymczak*, 451 Mich 607; 548 NW2d 603 (1996), which held that governmental agencies had a duty to provide traffic control devices or warning signs at points of special hazard. The Court of Appeals then reversed the circuit court in part,[12] relying on this Court's holding in *Pick*, and remanded the case with instructions to determine whether the intersection at issue was a point of special hazard. The Court of Appeals affirmed the trial court's denial of the SCRC's motion on the intervening negligence issue. We granted defendant SCRC leave to appeal.[13]

### III. STATUTORY LANGUAGE

Governmental immunity is the public policy, derived from the traditional doctrine of sovereign

---

[12] *Evens v Shiawassee Co Rd Comm'rs*, unpublished opinion per curiam, issued March 7, 1997 (Docket No. 186253).

[13] We initially denied the SCRC's application for leave to appeal, 459 Mich 879 (1998), but subsequently granted the SCRC's motion for reconsideration, 459 Mich 928 (1998), holding the case in abeyance for *Brown*, n 3 *supra*. After *Brown* was dismissed by stipulation of the parties, we granted defendant SCRC leave to appeal. 460 Mich 867 (1999).

immunity, that limits imposition of tort liability on a governmental agency. *Ross, supra* at 621. Under the governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*, governmental agencies are immune from tort liability when engaged in a governmental function. Immunity from tort liability, as provided by MCL 691.1407; MSA 3.996(107), is expressed in the broadest possible language—it extends immunity to all governmental agencies for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function. *Ross, supra* at 618. However, there are five statutory exceptions to governmental immunity.[14] The Legislature's refusal to abolish completely governmental immunity, evidences a clear legislative judgment that public and private tortfeasors are to be treated differently:

> "Government cannot merely be liable as private persons are for public entities are fundamentally different from private persons. Private persons do not make laws. Private persons do not issue and revoke licenses to engage in various professions and occupations. Private persons do not quarantine sick persons and do not commit mentally disturbed persons to involuntary confinement. Private persons do not prosecute and incarcerate violators of the law or administer prison systems. Only public entities are required to build and maintain thousands of miles of streets, sidewalks and highways. Unlike many private persons, a public entity cannot often reduce its risk of potential liability by refusing to engage in a particular activity, for government must continue to govern and is required to furnish services

---

[14] The five statutory exceptions are: the highway exception, MCL 691.1402; MSA 3.996(102), the motor vehicle exception, MCL 691.1405; MSA 3.996(105), the public building exception, MCL 691.1406; MSA 3.996(106), the proprietary function exception, MCL 691.1413; MSA 3.996(113), and the governmental hospital exception, MCL 691.1407(4); MSA 3.996(107)(4).

that cannot be adequately provided by any other agency.
Moreover, in our system of government, decision-making
has been allocated among three branches of government—
legislative, executive and judicial—and in many cases deci-
sions made by the legislative and executive branches
should not be subject to review in tort suits for damages,
for this would take the ultimate decision-making authority
away from those who are responsible politically for making
the decisions." [*Ross, supra* at 618-619.]

Because immunity necessarily implies that a "wrong"
has occurred, we are cognizant that some tort claims,
against a governmental agency, will inevitably go
unremedied. Although governmental agencies may be
under many duties, with regard to services they pro-
vide to the public, only those enumerated within the
statutorily created exceptions are legally compensa-
ble if breached. MCL 691.1407; MSA 3.996(107); *Ross,
supra* at 618-619.

These consolidated cases involve the highway ex-
ception, MCL 691.1402(1); MSA 3.996(102)(1), which
provided:[15]

Each governmental agency having jurisdiction over any
highway shall maintain the highway in reasonable repair so
that it is reasonably safe and convenient for public travel.
Any person sustaining bodily injury or damage to his or her
property by reason of failure of any governmental agency to
keep any highway under its jurisdiction in reasonable
repair, and in condition reasonably safe and fit for travel,
may recover the damages suffered by him or her from the
governmental agency. The liability, procedure and remedy

---

[15] Nawrocki's accident occurred on May 28, 1993, and Evens' accident
occurred on May 18, 1992. Accordingly, the statutory language applicable
in these consolidated cases is that found in 1990 PA 278, § 1, effective
December 11, 1990, rather than the current statutory language, which was
enacted by 1999 PA 205, effective December 21, 1999. We believe today's
holding is equally applicable to cases brought after this recent enactment.

as to county roads under the jurisdiction of a county road commission shall be as provided in section 21 of chapter IV of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Michigan Compiled Laws. The duty of the state and the county road commissions to repair and maintain highways, and the liability therefor, shall extend only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

There is one basic principle that must guide our decision today: the immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed. *Robinson v Detroit*, 462 Mich 439, 455; 613 NW2d 307 (2000); *Suttles*, 457 Mich 641; *Horace v City of Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998); *Wade v Dep't of Corrections*, 439 Mich 158, 166; 483 NW2d 26 (1992); *Reardon v Dep't of Mental Health*, 430 Mich 398, 411; 424 NW2d 248 (1988); *Ross, supra* at 618.[16]

The highway exception waives the absolute immunity of governmental units with regard to defective highways under their jurisdiction. However, when the Legislature codified governmental immunity in 1964, it specifically reduced the purview of the highway exception in MCL 691.1402; MSA 3.996(102) from the broad approach previously taken. *Suttles*, 457 Mich 644. Because subsection 2(1) is a narrowly drawn exception to a broad grant of immunity, there must be strict compliance with the conditions and restric-

---

[16] The Legislature codified the definitional determinations of *Ross, supra*, when it enacted 1986 PA 175. In doing so, the Legislature put its imprimatur on this Court's giving the exceptions to governmental immunity a narrow reading. *Horace, supra* at 754, n 6; *Reardon, supra* at 412.

tions of the statute. *Scheurman v Dep't of Transportation*, 434 Mich 619, 629-630; 456 NW2d 66 (1990). Thus, we are compelled to strictly abide by these statutory conditions and restrictions in deciding the instant cases.

Moreover, when reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). We begin by examining the plain language of the statute. It is a fundamental principle of statutory construction that the words used by the Legislature shall be given their common and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

The structure of MCL 691.1402(1); MSA 3.996(102)(1) is critical to its meaning. Thus, we begin by observing that the first and second sentences of the highway exception clause apply to all governmental agencies having jurisdiction over any highway. In contrast, the third and fourth sentences address more specifically the duty and resulting liability of the state and county road commissions. Therefore, while we are constrained to construe the highway exception as a whole,[17] it is necessary to parse each sentence of the statutory clause to ascertain the scope of the exception, as determined by the stated policy considerations of the Legislature.

---

[17] See *Franges v General Motors Corp*, 404 Mich 590, 611; 274 NW2d 392 (1979).

The first sentence of the statutory clause, crucial in determining the scope of the highway exception, describes the basic duty imposed on all governmental agencies, including the state, having jurisdiction over any highway: "[to] maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." This sentence establishes the duty to keep the highway in reasonable repair. The phrase "so that it is reasonably safe and convenient for public travel" refers to the duty to maintain and repair. The plain language of this phrase thus states the desired outcome of reasonably repairing and maintaining the highway; it does not establish a second duty to keep the highway "reasonably safe." *Pick, supra* at 635-636 (RILEY, J., dissenting).

The second sentence describes those persons who may generally recover damages when injured by a breach of the duty created by the *first* sentence: "[a]ny person sustaining bodily injury or damage to his or her property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel . . . ."[18]

---

[18] The dissent accuses us of reading "the first and second sentence of MCL 691.1402(1); MSA 3.996(102)(1) *separately*." *Post*, p 192 (emphasis in the original). In fact, we read these sentences *together* to reach our holding today. The plain language of the second sentence merely establishes the liability for breach of the duty created by the first sentence, that being the duty to *"maintain the highway in reasonable repair* so that it is reasonably safe and convenient for public travel." Subsection 2(1) (emphasis added). The statutory clause creates only *one* exception to governmental tort immunity, that being the breach of the duty to repair and maintain the highway. The second sentence does not create, as we believe the dissent wrongly asserts, *post*, pp 192-193, a *second* exception outside the duty to maintain and repair the highway.

We think it is important to note that the first, third, and last (fourth) sentence of subsection 2(1) speak to only *one* duty, that being the duty to

The third sentence of the statutory clause specifically addresses the duty and resulting liability of county road commissions, as opposed to the state and other governmental agencies with highway jurisdiction. This sentence provides that the "liability, procedure and remedy as to county roads under the jurisdiction of a county road commission" is provided by MCL 224.21; MSA 9.121. At the time in question, MCL 224.21; MSA 9.121 provided, in pertinent part:

> It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for *public travel*, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to *public travel*. [Emphasis added.][19]

The fourth sentence of the statutory clause, specifically applicable to the state and county road commissions, proceeds to narrowly limit the general duty to repair and maintain, created by the *first* sentence, "only to the improved portion of the highway designed for vehicular travel." Further, this sentence expressly provides that the limited duty does *not* extend to "sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel." We believe the plain

repair and maintain the highway. If the dissent's assertion were logically acceptable, these sentences would be mere surplusage, because, as asserted by the dissent, the general "duties" relating to highways, and the resulting liability for breach thereof, are created in the *second* sentence. See *In re MCI Telecommunications*, 460 Mich 396, 414; 596 NW2d 164 (1999) (a court should avoid a construction of a statute that would render any part of it surplusage or nugatory).

[19] MCL 224.21; MSA 9.121 was subsequently amended by 1996 PA 23, § 1, effective February 16, 1996. Those amendments are not pertinent to our analysis here.

language of this sentence definitively limits the state
and county road commissions' duty with respect to
the *location* of the alleged dangerous or defective
condition; if the condition is not located in the actual
roadbed designed for vehicular travel, the narrowly
drawn highway exception is inapplicable and liability
does not attach.

### A. PEDESTRIANS

The facts of *Nawrocki v Macomb Co Rd Comm*
require us to apply these principles to determine
whether the statutory language of the highway excep-
tion imposes a duty on the state and county road
commissions to protect pedestrians from dangerous
or defective conditions in the improved portion of the
highway designed for vehicular travel, even when
injury does not arise as a result of a vehicular acci-
dent. We conclude that it does.[20]

The MCRC argues that, as a general rule, pedestrians
are excluded from the protection of the highway
exception. It contends that, even if pedestrians are
not excluded as a general rule, they may benefit from
the highway exception only when the improved por-
tion of the highway is not reasonably safe for *vehicu-
lar* travel, as opposed to pedestrian travel.

We believe, however, that pedestrians may recover
damages from the state or county road commission
for personal injuries and property damage, the same
as all other persons, when such injury or damage is

---

[20] We do not decide whether the portion of Kelly Road at issue in
*Nawrocki* was actually unsafe for pedestrian travel. Below, Nawrocki's
expert witness conceded that the road was reasonably safe for vehicular
travel.

proximately caused by a failure of the state or county road commission to carry out its duty to repair and maintain the narrowly defined location prescribed by the fourth sentence of the statutory clause: the "improved portion of the highway designed for vehicular travel."

There are four recent opinions of this Court that discuss whether, or to what extent, the highway exception extends to pedestrians: *Roy v Dep't of Transportation*, 428 Mich 330; 408 NW2d 783 (1987), *Gregg*, *Mason*, and *Suttles*, *supra*. This Court's decisions in these cases have interpreted the statutory language in conflicting and confusing ways.

First, *Roy* involved a plaintiff riding a bicycle on a bicycle path parallel to, but separate from, the roadway actually used by vehicular traffic. The plaintiff suffered injuries when his bicycle struck a bump on the asphalt path. This Court concluded that the plaintiff was not protected by the highway exception because the bicycle path at issue was an "installation." The *Roy* Court concluded, on the basis of its review of the statutory language, that the Legislature chose not to impose a duty of maintenance or repair on governmental agencies on behalf of pedestrians or bicyclists traveling *outside* the improved portion of the highway. This legislative intent was demonstrated by the exclusionary language contained in the fourth sentence of the statute, which indicates that pedestrians traveling in such locations are adequately protected by their separation from vehicular traffic. *Id.* at 336. With regard to pedestrians traveling on the improved portion of the highway designed for vehicular travel, this Court explained that the location of the alleged defect was the critical factor in determining

whether the highway exception applied to a particular plaintiff's case:

> Indeed, the statute does not offer general protection to pedestrians or motorists *without regard to location.* . . . The criterion used by the Legislature was not based on the class of travelers, but the road on which they travel. [*Id.* at 341 (emphasis added).]

The next case in which this Court discussed the application of the highway exception to pedestrians, *Gregg*, involved a plaintiff riding a bicycle on a bicycle path immediately adjacent to the paved roadway, who suffered injuries when his bicycle struck a pothole.[21] The *Gregg* Court again focused on whether the bicycle path at issue was an "installation," but determined that it was not, because it was located on "the inner portion of the shoulder closest to the roadway." *Id.* at 310. The defendant in *Gregg* argued that nonmotorists, as a class, are not protected by the highway exception. This Court rejected that argument in reliance on the "[a]ny person" language of the statute's second sentence, concluding that the plaintiff fell within the general class of travelers protected by the highway exception. *Id.* at 311.

The third case, *Mason*, involved a child struck by a car while crossing the street at the crosswalk. Once again focusing on the "installation" exclusion, this Court held that the statute excluded "specific installations whose only rational purposes narrowly service the unique needs of pedestrians," *id.* at 136, and indi-

---

[21] The facts in *Gregg* were distinguished from those in *Roy* because the bicycle path in *Roy* was parallel to, but separate from, the highway, while the bicycle path in *Gregg* was immediately adjacent to the lanes for vehicular traffic, located between the white line and the shoulder of the road.

cated a legislative "conclusion that pedestrians and users of these installations have been sufficiently protected by the separation of them from motorists, without any need to impose a duty of maintenance and repair enforced by liability for resultant injuries." *Id.* at 137.

> The explicit removal of exclusively pedestrian installations from the highway exception, coupled with the express language of the provision itself, permits but one conclusion: Pedestrians who trek upon Michigan highways must and do venture beyond the protective mandates of MCL 691.1402(1); MSA 3.996(102)(1). . . . Pedestrians are situated differently than vehicular traffic, which may approach obstacles in the highway too quickly to avoid them, or may avoid obstacles only by jeopardizing traffic in the adjoining lanes. [*Id.* at 137-138.]

The fourth case, *Suttles*, involved a pedestrian who, like Nawrocki, sustained injuries when stepping out of a parked car.[22] This Court did not decide whether the plaintiff was entitled to the protections of the highway exception, but remanded for a factual determination of the exact location where she fell. 457 Mich 651-652. However, the *Suttles* Court stated that "[a] review of MCL 691.1402(1); MSA 3.996(102)(1) and previous decisions of this Court" necessitated a conclusion that pedestrians may come within the highway exception. 457 Mich 645.[23]

---

[22] The Court of Appeals in *Suttles* attempted to follow and apply the holding and analysis of *Mason*.

[23] That is, "[a]s long as the individual was injured on the improved portion of the highway [designed for vehicular travel] and was not injured in any of the three areas listed in MCL 691.1402(1); MSA 3.996(102)(1), we have consistently held that that individual stated a cause of action so as to avoid governmental immunity." *Suttles*, 457 Mich 649.

These cases exemplify the confusing and inconsistent nature of the case law discussing the highway exception, which we acknowledged at the outset of this opinion. The case law fails to consistently adhere to the basic principle found in *Ross* or to a single interpretation of the statutory language, thereby also necessarily failing to establish a clear rule of law describing what protections, if any, the highway exception accords to pedestrians. While *Mason* did not expressly overrule *Gregg*, it can fairly be read as an implicit rejection of *Gregg*'s holding that pedestrians, as a subset of the class of "[a]ny person sustaining bodily injury or damage to his or her property," are *always* protected by the highway exception. In contrast, *Mason* can fairly be read for the proposition that pedestrians are *never* protected by the highway exception.

As a consequence, parties like Nawrocki will typically cite *Roy* or *Gregg* for the proposition that pedestrians may recover under the highway exception because the state or county road commissions' duty is determined not by the identity of the injured person, but by the area on which the person traveled. Simultaneously, defendants like the MCRC will cite *Mason* for the proposition that pedestrians are simply not protected by the highway exception. These conflicting decisions must be resolved, in a manner that faithfully interprets and applies the statutory language drafted by the Legislature and adheres to the narrow construction of the highway exception as required by *Ross*.

Unquestionably, it is the language used by the Legislature in drafting this statutory clause that has created much of the continuing confusion regarding

whether pedestrians injured on public highways may avail themselves of the protection afforded by the highway exception. For example, the judiciary has struggled with the language contained in the fourth sentence of MCL 691.1402(1); MSA 3.996(102)(1), regarding "sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel."[24]

While any number of interpretations of the highway exception might be—and have been—argued,[25] ulti-

---

[24] In *Suttles*, this Court recognized the confusing nature of this language and cited, at length, the Court of Appeals discussion of this problematic statute:

The express language of the highway exception indicates that the duty of highway authorities to repair and maintain the highways "shall extend only to the improved portion of the highway designed for vehicular travel." The provision then states that such duty "shall not" extend to three types of installations: (1) "sidewalks"; (2) "crosswalks"; and (3) "any *other* installation outside of the improved portion of the highway designed for vehicular travel." (Emphasis added.)

This language is confusing for several reasons. First, its structure implies that installations 1, 2, and 3 are exclusions from the highway exception. Yet, it is difficult to fathom how "sidewalks," unlike "crosswalks," could be construed as part of the "improved portion of the highway designed for vehicular travel," even absent their explicit exclusion from the highway exception. Second, the "any *other* installation" language of the third exclusion to the highway exception follows a specific enumeration of terms that by implication also describe installations "outside of the improved portion of the highway designed for vehicular travel"; "crosswalks," however, clearly do not fit this description. In other words, it is unclear why "sidewalks" are expressly excluded from the highway exception and it is equally unclear why "crosswalks" are implicitly described as installations "outside of the improved portion of the highway designed for vehicular travel." [457 Mich 643, n 5.]

[25] For example, in attempting to interpret the statutory clause, one might conclude that the fourth sentence of the statutory clause, specifically the phrase "designed for vehicular travel," expressly limits the references to "public travel" in the first and third sentences, and thereby establishes a duty within the state and county road commissions to repair and

mately it is this Court's obligation to set forth what we believe to be the most plausible construction of the statutory language in controversy, and, at the same time, construe the highway exception in accordance with the interpretative principles of *Ross*.

Thus, we agree with *Roy* that the *location* of an alleged dangerous or defective condition, as narrowly defined in the fourth sentence of the statutory clause, is the critical factor in determining whether a plaintiff is successful in pleading in avoidance of governmental immunity under the highway exception. Moreover, given the Legislature's use of language in the statutory clause, we believe *Gregg* properly relied on the "[a]ny person" language of the statute's second sentence to hold that pedestrians are protected by the highway exception, and that the words "designed for vehicular travel" serve to define and describe the "improved portion of the highway"; in other words, the *location* where the state and county road commissions' duty arises.

However, we are convinced that *Mason* erred in rejecting any reliance on the "[a]ny person" language,

maintain highways so that they are reasonably safe for *vehicular* travel only. One might also be convinced that the fourth sentence of the statutory clause limits the state and county road commissions' duty by defining the location within which this duty arises, not with regard to the *class* of traveler, but with regard to the *type of risk* the highway exception seeks to avoid, i.e., dangers to vehicular travel, not pedestrian travel. See e.g., *Mason, supra.* The statutory language might also lead one to the conclusion that, although pedestrians, as a class, may be protected by the statute—specifically under the second sentence's "any person" phrase—the fourth sentence only allows a pedestrian protection if an injury or damage was the result of a vehicular accident. See *Mason, supra* at 135, n 4. However, in our judgment, none of these interpretations reflects the construction of the highway exception that is most compatible with its language; we merely acknowledge that the exception is susceptible to misreading, a misreading that we believe has been reflected in past judicial decisions.

and in determining that the words "designed for vehicular travel" "permit[] but one conclusion: Pedestrians who trek upon Michigan highways must and do venture beyond the protective mandates of MCL 691.1402(1); MSA 3.996(102)(1)." *Mason, supra* at 137.[26] In our view, this conclusion ignores the implication of the first and third sentences of the statutory clause, both of which impose a duty upon the state and county road commissions to repair and maintain highways so that they are "reasonably safe and convenient for *public* travel," and results in a much too narrow construction of the statutory clause, thereby completely removing pedestrians from the protection afforded by the highway exception. Moreover, we are convinced that *Mason* further complicated matters by stating that a pedestrian *may* recover under the highway exception, but only for injuries that result from a vehicular accident. *Id.* at 135, n 4. This proposition, set forth as dicta in *Mason*, is inconsistent with the statutory language of the highway exception.

While it is true that the second sentence of MCL 691.1402(1); MSA 3.996(102)(1) generally allows "any person" to recover damages from a governmental agency with highway jurisdiction, the fourth sentence of the statutory clause specifically limits the state and county road commissions' duty, and resultant liability for breach of this duty, "only to the improved portion of the highway designed for vehicular travel." The plain language of this sentence, though limiting the

---

[26] We note that in *Mason* the claimed defect was in a crosswalk; the express exclusion of crosswalks from the highway exception was dispositive. Accordingly, we believe that the other propositions within the majority opinion were dicta. See *Mason, supra* at 139 (CAVANAGH, C.J., dissenting in part).

duty and resultant liability, does not expressly exclude any particular *class* of injured traveler from recovering damages under the highway exception. Thus, we believe that pedestrians who sue the state or a county road commission are not automatically and entirely excluded, as a class, from the protections of the statutory clause.

The general description of the state's duty, with regard to the highway exception, is established by the first sentence of the statutory clause:

Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for *public* travel. [Emphasis added.]

The general description of a county road commission's duty, with regard to the highway exception, is referenced in the third sentence of the statutory clause, as set forth in MCL 224.21; MSA 9.121:

It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for *public* travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to *public* travel. [Emphasis added.]

Thus, a county road commission's duty is coextensive with that owed by other governmental agencies, including the state, under the first two sentences of the highway exception clause. However, it is the fourth sentence of the highway exception that expressly limits the duty of the state and county road commissions, the breach of which permits avoidance of governmental immunity,

only to the improved portion of the highway designed for vehicular travel and shall not include sidewalks, cross-walks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [MCL 691.1402(1); MSA 3.996(102)(1).]

Constrained to apply the statutory language as best as possible as written, we are persuaded that the exclusionary language of the fourth sentence of the statutory clause narrows the duty of both the state and county road commissions with regard to the *location* of the dangerous or defective condition, not to the *type* of travel *or* traveler. The phrase "designed for vehicular travel" modifies the prior phrase "improved portion of the highway" and thus defines the location to which the duty of the state and county road commissions extends. Thus, if the condition proximately causing injury or property damage is located in the improved portion of the highway designed for vehicular travel, not otherwise expressly excluded, the state or county road commissions' statutory duty under the highway exception is implicated and a plaintiff is capable of pleading in avoidance of governmental immunity.[27] Moreover, because the state and county road commissions must "repair and maintain" their respective highways and roads so that they are "reasonably safe and convenient for public

---

[27] We are not unaware of the potential for today's holding to result in outcomes that appear illogical or incongruous. For example, a pedestrian injured by a dangerous or defective condition located within a crosswalk, which is arguably integrated into a roadbed, may not be able to plead in avoidance of governmental immunity, while a pedestrian who steps out of a vehicle, onto the paved or unpaved portion of the roadbed used by vehicular traffic, and is injured by a dangerous or defective condition within the roadbed itself, may proceed under the highway exception. However, such an anomalous result appears compelled by the language of the highway exception.

travel," and because we believe "public travel" encompasses *both* vehicular and pedestrian travel, the plain language of the highway exception cannot be construed to afford protection only when a dangerous or defective condition "of the improved portion of the highway designed for vehicular travel" affects *vehicular* travel.[28]

Applying these principles to *Nawrocki*, we conclude that the circuit court erred in granting summary disposition to the MCRC. By alleging that she was injured by a dangerous or defective condition of the improved portion of the highway designed for vehicular travel, and not a sidewalk, crosswalk, or "any other installation outside of the improved portion of the highway designed for vehicular travel," Nawrocki pleaded in avoidance of governmental immunity. We therefore reverse the judgment of the Court of Appeals and remand to the circuit court for further proceedings consistent with this opinion.[29]

### B. TRAFFIC SIGNS AND SIGNALS

The facts of *Evens v Shiawassee Co Rd Comm'rs* require us to apply the statutory language of the high-

---

[28] We acknowledge that repairing and maintaining the improved portion of the highway in a condition reasonably safe and convenient for *public* travel represents a higher duty of care on the part of the government than repairing and maintaining it for *vehicular* travel.

[29] As noted by this Court in *Suttles*, 457 Mich 651, n 10, simply falling within the highway exception is not the end of the analysis. After successfully pleading in avoidance of governmental immunity, a plaintiff still must prove a cause of action under traditional negligence principles:

Concepts such as the "intended and permitted user" language derived from *Gregg* apply to the negligence analysis, and bear on whether a defendant owed a duty to the plaintiff or whether the plaintiff was comparatively negligent.

way exception to determine whether the state or a county road commission has a duty to install, maintain, repair, or improve traffic control devices, including traffic signs.

Subsequent to *Wechsler v Wayne Co Rd Comm*, 215 Mich App 579; 546 NW2d 690 (1996), remanded 455 Mich 863 (1997), a case assuming, without deciding, that the highway exception to governmental immunity created some level of duty with regard to posting traffic signs, this Court expressly held that "a duty to provide adequate warning signs or traffic control devices at known points of hazard arises under the highway exception of the governmental tort liability act. MCL 691.1402; MSA 3.996(102)." *Pick, supra* at 619. In *Pick*, the plaintiff was injured in a collision at an intersection of two roads under the jurisdiction of the Gratiot County Road Commission. At issue on appeal was whether the highway exception created a duty within county road commissions to install signs and other traffic control devices at "known points of hazard" associated with the improved portion of the highway and whether visual obstructions located on private property adjacent to the highway imposed liability on a county road commission. In *Pick*, the Court of Appeals affirmed the circuit court's grant of summary disposition to the defendant and, quoting *Scheurman, supra*, stated:

"What is not so clear is whether the improved portion of the highway includes improvements that serve as integral parts of the highway, such as signs and shoulders. [Citations omitted.] If there is an 'integral parts of the highway' exception under the broad concept of 'traffic sign maintenance' that includes erecting signs or warning devices at points of hazard, it appears to conflict with the very narrow definition of duty that excluded street lighting in *Scheur-*

*man.* Because we can find no way to distinguish between street lighting and traffic signs, and because both have their physical structure outside the traveled or paved portion of the roadbed, we must conclude that the defendant is not subject to liability for the alleged lack of adequate traffic signs at the intersection of Roosevelt and Crapo Roads." [*Pick, supra* at 613-614.]

*Pick* determined that the ruling of the circuit court, and the Court of Appeals affirmance of that ruling, were "erroneous as a matter of law." *Id.* at 615. The majority believed that *Scheurman* "[did] not establish authoritative precedent for any such 'very narrow definition of duty' and that, in any event, the statutory language of the highway exception, read in its entirety, does not support such a narrow definition." *Id.* at 616.

Amicus curiae Michigan Department of Transportation urges this Court to overrule *Pick* and hold that the statute imposes no duty on the state and county road commissions to install traffic signs, on the theory that signs are outside the improved portion of the highway designed for vehicular travel, which connotes merely the physical surface of the road. In light of the broad reading of the highway exception by this Court in *Pick,* and the plain language used by the Legislature in setting forth this exception, we feel compelled to accept the amicus' invitation and overrule *Pick.*

We believe that a broad, rather than a narrow, reading of the highway exception is required in order to conclude that it is applicable to anything but the highway itself. See *Horace, supra.* In *Pick,* this Court stated that "a bright-line rule . . . that limits governmental responsibility for public roadways to factors

that are physically part of the roadbed itself" would require "an improperly stringent reading of the highway exception." *Id.* at 621. This statement evidences a departure from the interpretative principle of *Ross.* In ostensibly stating a more "workable principle" for applying the highway exception, *Pick* resulted in a complete abrogation of this Court's duty to *narrowly* construe exceptions to the *broad* grant of immunity. Because *Pick* entails such a broad reading of the highway exception, and thus disregards the basic principle of *Ross,* we believe that it must be overruled if we are to have any hope of restoring a stable rule of law in this difficult area of the law. *Robinson, supra* at 455; *Horace, supra* at 750, n 3.

Further, although *Pick* determined that the "statutory language of the highway exception itself, read in its proper context, is fully adequate for resolution of the precise legal question before us in this case," *id.* at 620, we are convinced that its holding *cannot* be supported by the plain language of the statutory clause. In attempting to place its interpretation of the statute in the "proper context," *Pick* failed to simply apply the plain language of the highway exception and, instead, relied on judicially invented phrases nowhere found in the statutory clause, thus thrusting upon the state and county road commissions a duty not contemplated by the Legislature.[30] *Pick* unaccept-

---

[30] The dissent contends that "[t]he plain meaning of the words 'improved portion of the highway designed for vehicular travel' connotes a broader concept than just the surface of the road, itself." *Post,* p 188. We are convinced, however, that quite the opposite is true; while the term "highway" may be broad and potentially ambiguous, the phrase "improved portion" clearly narrows the term "highway" to its physical structure, and the phrase "designed for vehicular travel" further narrows "highway" to the physical roadbed itself. Thus, the dissent is simply wrong, in our judgment, when it states that the language of the highway exception "leaves

ably departed from the plain language of the statute, thus allowing a plaintiff to avoid governmental immunity for conditions arising at "point[s] of hazard," affecting travel on the surface of the improved portion of the highway, regardless of whether those conditions originated on the surface of the roadbed or not:

> Such an expansive interpretation of [the highway exception] goes far beyond that which section 2 provides. The statute provides that [the waiver of immunity under the highway exception] "shall extend only to the improved portion of the highway [designed for vehicular travel]," it does not contemplate "conditions, the source of which do not originate on the surface of the roadbed . . . ." [*Scheurman, supra* at 631, n 22.][31]

While we agree with *Pick* that the first sentence of the statutory clause establishes a general duty to repair and maintain highways so that they are reasonably safe and convenient for public travel, this duty, with regard to the state and county road commissions, is significantly limited, extending "*only* to the improved portion of the highway *designed for vehicular travel*." MCL 691.1402(1);  MSA 3.996(102)(1) (emphasis added). Nowhere in this language, or anywhere else in the statutory clause, do phrases such as "known points of hazard," "points of special danger," "integral parts of the highway," or "traffic sign maintenance" appear.[32] We are not persuaded that the high-

---

uncertain whether the space above the highway containing traffic lights is included." *Post,* p 189.

[31] The limited scope of the term "highway" in § 2 "parallels the common understanding of the word." *Scheurman v Dep't of Transportation,* 434 Mich 630; *Roy v Dep't of Transportation,* 428 Mich 339.

[32] *Pick*'s effort to define a "point of hazard":

way exception contemplates "conditions" arising from "point[s] of hazard," "areas of special danger," or "integral parts of the highway," outside the actual roadbed, paved or unpaved, designed for vehicular travel. None of these phrases or concepts appears anywhere within the provisions of the highway exception. To continue to rely upon these phrases in determining the scope of the highway exception is contrary to the language selected by the Legislature in creating this exception.

Unless we construe the highway exception narrowly, as mandated by *Ross*, and in accordance with the language of the statutory clause, every accident and every injury, occurring on an otherwise unexceptional highway, containing no dangerous or defective conditions in the actual roadbed itself, will become the potential basis for a lawsuit against the state or county road commissions. This is an extraordinary proposition not contemplated, in our judgment, by the Legislature's narrowly drawn highway exception.[33]

provide[s] insight to the Legislature's desire to limit the duty of the state and county only to the obligation to "repair and maintain" the improved portion of the highway [designed for vehicular travel]. The duty to repair would generally limit the government's liability to cases in which there are defects in the roadbed's surface. In contrast, the Legislature may have feared that it could not anticipate the circumstances in which the state or county would be exposed to liability if the Legislature imposed on [them] the duty to ensure that travel is reasonably safe on governmental highways. [*Id.* at 641 (RILEY, J., dissenting).]

[33] The dissent relies upon the doctrine of legislative acquiescence in stating that "the Legislature [in making revisions to the governmental immunity act in 1999] did not revise the highway exception to exclude traffic control devices, despite *Pick's* 1996 holding that traffic control devices are included within the exception." *Post*, p 197, n 8. However, this Court has made it clear that the doctrine of legislative acquiescence "is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legisla-

For example, under *Pick*, a plaintiff may sue the state or a county road commission, and plausibly argue that

— there should have been yield signs along a highway instead of no signs;

— there should have been stop signs along a highway instead of yield signs;

— there should have been a flashing yellow/red traffic light along a highway instead of stop signs;

— there should have been a fully functional red/yellow/green traffic signal along a highway instead of a flashing yellow/red light;

— there should have been an overpass above a highway, thus eliminating the need for traffic signals altogether;

— there should have been a 25 MPH sign, instead of a 30 MPH sign, nearing an approach to an intersection; or

— there should have been a left turn lane where none existed.[34]

---

ture's intent from its *words*, not from its silence." *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999) (emphasis in the original). See also *United States v Price*, 361 US 304, 313; 80 S Ct 326; 4 L Ed 2d 334 (1960) (views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one).

[34] There has certainly been no evidence propounded that, before *Pick*, a dearth of traffic control devices existed, creating unsafe highways and requiring remedy by the application of a broad construction of the highway exception. There is ample evidence, however, that lawsuits never contemplated or intended by the Legislature have been brought under the auspices of this statutory clause. See, e.g., *Wechsler, supra* (improvement of traffic signs); *Helmus v Dep't of Transportation*, 238 Mich App 250; 604 NW2d 793 (1999) (adequate traffic control devices); *McIntosh v Dep't of Transportation*, 234 Mich App 379; 594 NW2d 103 (1999), held in abeyance pending outcome of the present cases, unpublished order of the Supreme Court, entered November 11, 1999 (Docket No. 203017) (median

There is potentially no end to the creative and innovative theories that can be raised in support of the proposition that a highway accident, occurring upon even the most unremarkable thoroughfare, was, in fact, the result of inadequate or imperfect signage. Courts possess no greater insight than the state or county road commissions into matters involving traffic control devices, such as traffic signs. Maintenance of an appropriate deference for, and application of, the public policy choices made by the Legislature, as reflected in the plain language of the statutory highway exception, ensures that determinations regarding how to best allocate limited public highway funds are left to the proper authorities.[35]

Because we are persuaded that the state and county road commissions' duty, imposed by the high-

---

barriers); *Reeves v Kmart Corp*, 229 Mich App 466; 582 NW2d 841 (1998) (adequate signs); *Iovino v Michigan*, 228 Mich App 125; 577 NW2d 193 (1998), held in abeyance pending outcome of present case, unpublished order of the Supreme Court, entered June 30, 1999 (Docket No. 197410) (adequate signs); *Paddock v Tuscola & Saginaw Bay R Co, Inc*, 225 Mich App 526; 571 NW2d 564 (1997) (adequate signs); *McKeen v Tisch (On Remand)*, 223 Mich App 721; 567 NW2d 487 (1997) (tree limb hanging over roadway).

[35] We are convinced that the legislative process is the appropriate process for apportioning public funds for such expenditures as signage, and that the executive process, involving the road authorities of the state, is the appropriate process for determining the specific forms of signage necessary to produce safe highways. See, e.g., *Wechsler v Wayne Co Rd Comm, supra* at 588, n 4:

> While a particular decision to "improve," "augment," or "expand" a highway may be prudent and advisable, the decision nevertheless is for persons entrusted with the expenditure of taxpayer resources, not the courts.

Ultimately, if the people of this state are dissatisfied with the quality of signage along their highways, they can communicate this dissatisfaction through the selection of representatives to state and local executive and legislative bodies.

way exception clause, is only to repair and maintain "the improved portion of the highway designed for vehicular travel," MCL 691.1402(1); MSA 3.996(102)(1), we hold that the actual language of this statutory clause sets forth an exception that encompasses only the "traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel." *Scheurman, supra* at 631.

We are thus compelled to overrule *Pick* because it fails to narrowly construe the highway exception and contradicts the language of the statute, imposing upon state and county road commissions a duty under the highway exception to install, maintain, repair, or improve traffic control devices, including traffic signs. Yet, we wish to make clear that we do not lightly overrule existing precedent. In *People v Graves*, 458 Mich 476, 480-481; 581 NW2d 229 (1998), this Court recently discussed the proper circumstances under which it would overrule prior case law:

It is true of course that we do not lightly overrule a case. This Court has stated on many occasions that "[u]nder the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." Further, . . . "[b]efore this court overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it." When it becomes apparent that the reasoning of an opinion is erroneous, and that less mischief will result from overruling the case rather than following it, it becomes the duty of the court to correct it. Although we respect the principle of stare decisis, we also recognize the common wisdom that the rule of stare decisis is not an inexorable command. [Citations omitted.]

As we recently explained in *Robinson, supra,* a judicial tribunal is most strongly justified in its reversal of precedent when adherence to such precedent would perpetuate a plainly incorrect interpretation of the language of a constitutional provision or statute. *Id.* at 463-468.

We are confident that our holding today is also reinforced by the fact that the duty implicating the installation, maintenance, repair, or improvement of traffic signs is expressly created under statutes separate from the highway exception. For example, MCL 257.609(a); MSA 9.2309(a) provides:

> The state highway commission *shall place or require to be placed and maintain or require to be maintained* such traffic-control devices, conforming to said manual and specifications, upon all state highways *as it shall deem necessary* to indicate and to carry out the provisions of this chapter or to regulate, warn or guide traffic. [Emphasis added.]

Further, MCL 257.610(a); MSA 9.2310(a) states:

> Local authorities and county road commissions in their respective jurisdictions *shall place and maintain* such traffic control devices upon highways under their jurisdiction *as they may deem necessary* to indicate and to carry out the provisions of this chapter or local traffic ordinances or to regulate, warn or guide traffic. All such traffic control devices hereafter erected shall conform to the state manual and specifications. [Emphasis added.]

Subsections 609(a) and 610(a) describe the state and county road commissions' "duty" regarding traffic control devices, obviously implicating traffic signs, in terms of what each agency "deems necessary." This is the language of discretion, not the imposition of a

duty, the breach of which subjects the agencies to tort liability—as opposed, perhaps, to political liability.[36] Clearly, *Pick* undermines the exercise of judgment properly accorded to the state and county road commissions by imposing a duty on them that has no basis under the plain statutory language of the highway exception, or, for that matter, the governmental immunity statute as a whole.[37]

---

[36] Contrary to the dissent, we do not "reach[] this conclusion simply by failing to give weight to the language that follows the phrase 'deem necessary.' " *Post*, p 190, n 4. The plain language of subsections 609(a) and 610(a), which we quote in their entirety, clearly demonstrates that the phrase "to indicate and to carry out the provisions of this chapter [or local traffic ordinances] or to regulate, warn or guide traffic," is modified by the phrase "as it [they] shall deem necessary." Furthermore, in attempting to create a logical connection between the plain language of the narrow highway exception to governmental tort immunity and the Motor Vehicle Code, the dissent wholly ignores the critical language found in subsection 2(1), but not found in subsections 609(a) and 610(a): the exception to tort immunity, at least with regard to the state and county road commissions, is only implicated upon the failure to reasonably maintain and repair "*only . . . the improved portion* of the highway *designed for vehicular travel.*" (Emphasis added.) While it is arguable that "highway," within the language of the Motor Vehicle Code, may include traffic control devices, the Legislature clearly intended to limit the *highway exception* to the *roadbed itself* when it drafted the fourth sentence of subsection 2(1). Following the dissent's logic would render the fourth sentence meaningless.

[37] The dissent accuses us of "shifting" the liability for traffic control devices, including traffic signs, from the state and county road commissions, to local municipalities. While the purpose of our holding today is merely to return to a principled application of the plain language of the highway exception, we are constrained to respond to the dissent's misapprehension of the governmental immunity statute.

Clearly, traffic signals and signs are not implicated in the broad definition of "highway" in MCL 691.1401(e); MSA 3.996(101)(e): " 'Highway' means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles." MCL 691.1402; MSA 3.996(102) creates an exception to governmental immunity for the state or county road commissions' failure to maintain and repair the "improved portion of the highway designed for vehicular travel." Thus, there is a gap that exists between the "improved portion of the highway designed for vehicular travel," and the broader confines of

We are convinced that *Pick*, and those cases relying on its analysis and outcome, disregards the basic principle of *Ross* and contradicts the plain language of the highway exception. Therefore, allowing *Pick* to stand, in our judgment, would perpetuate the lack of a principled and consistent application of the law and would permit the continuation of a heightened potential for arbitrary, inconsistent, and highly confused decision making in personal injury or property damage cases involving the state or county road commissions. Such results would be contrary to the statute, undermine other important case law, and impose far more injury upon the judicial process than any effect associated with our decision to apply the policy decisions of the Legislature instead of the policy decisions of this Court in *Pick*.

The state and county road commissions' duty, under the highway exception, is only implicated upon their failure to repair or maintain the actual physical structure of the roadbed surface, paved or unpaved, designed for vehicular travel, which in turn proximately causes injury or damage. *Scheurman, supra* at 631. A plaintiff making a claim of inadequate signage, like a plaintiff making a claim of inadequate street lighting or vegetation obstruction, fails to plead in avoidance of governmental immunity because signs are not within the paved or unpaved portion of the roadbed designed for vehicular travel. Traffic device claims, such as inadequacy of traffic signs, simply do

---

"highway," defined in subsection 1(e). MCL 691.1402a; MSA 3.996(102a) seeks to fill this gap, at least with respect to *county* highways. However, because traffic control devices are clearly not implicated in the broad definition of "highway," there can be no "shifting" of liability from the state and county road commissions to local municipalities.

not involve a dangerous or defective condition in the improved portion of the highway designed for vehicular travel.

Evens argues that the SCRC failed to install additional traffic signs or signals that might conceivably have made the intersection safer. Because the highway exception imposes no such duty on the state or county road commissions, we reverse the decision of the Court of Appeals and reinstate the trial court's grant of summary disposition to the SCRC.

### IV. CONCLUSION

With regard to the state and county road commissions, we hold that a pedestrian is entitled to the protections of the highway exception, the same as all other persons, when injuries are proximately caused by the defendant's failure to repair and maintain the improved portion of the highway designed for vehicular travel so that it is reasonably safe and convenient for public travel.

Additionally, we hold that the state or county road commissions have no duty, under the highway exception, to install, maintain, repair, or improve traffic control devices, including traffic signs. Rather, the state and county road commissions' duty, the breach of which invokes the highway exception, is limited exclusively to dangerous or defective conditions within the actual roadway, paved or unpaved, designed for vehicular travel.

W<span>EAVER</span>, C.J., and T<span>AYLOR</span>, C<span>ORRIGAN</span>, and Y<span>OUNG</span>, JJ., concurred with M<span>ARKMAN</span>, J.

APPENDIX

STATUTORY FRAMEWORK

The statutory highway exception imposes a duty on the state and county road commissions to repair and maintain "only . . . the improved portion of the highway designed for vehicular travel," so that it is "reasonably safe and fit for travel." MCL 691.1402(1); MSA 3.996(102)(1). Expressly excluded from this duty are "sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel." MCL 691.1402(1); MSA 3.996(102)(1).

PEDESTRIANS

Under the "[a]ny person" language of MCL 691.1402(1); MSA 3.996(102)(1), pedestrians fall within the general class of travelers protected by the highway exception.

The plain language of the highway exception definitively limits the state and county road commissions' duty with respect to the *location* of the alleged dangerous or defective condition; if the condition is not located in the actual roadbed designed for vehicular travel, the narrowly drawn highway exception is inapplicable and liability does not attach. MCL 691.1402; MSA 3.996(102).

TRAFFIC SIGNS AND SIGNALS

The state and county road commissions' duty, under the highway exception, is only implicated upon their failure to repair or maintain the actual physical structure of the roadbed surface, paved or unpaved, designed for vehicular travel, which in turn proximately causes injury or damage. This does not include signage. MCL 691.1402; MSA 3.996(102).

The highway exception does not contemplate conditions arising from "point[s] of hazard," "areas of special danger," or "parts integral to the highway," that are outside the actual roadbed, paved or unpaved, designed for vehicular travel. MCL 691.1402; MSA 3.996(102).

KELLY, J. (*concurring in part and dissenting in part*). I concur with the majority's disposition of *Nawrocki v Macomb Co Rd Comm*. But I cannot join its decision in *Evens v Shiawassee Co Rd Comm'rs*.

In the *Evens* case, the majority again decides that a well-reasoned precedent of this Court must give way to its own interpretation of a Michigan statute. MCL 691.1402(1); MSA 3.996(102)(1). I find the majority's analysis badly flawed.

## I. *NAWROCKI v MACOMB COUNTY ROAD COMMISSION*

In *Nawrocki v Macomb Co Rd Comm*, the trial court relied on obiter dictum from *Mason v Wayne Co Bd of Comm'rs*[1] to conclude that the highway exception to governmental immunity does not protect pedestrians, unless their injuries result from vehicular accidents. In so holding, the trial court ignored this Court's ruling in *Gregg v State Hwy Dep't*, 435 Mich 307; 458 NW2d 619 (1990).

In *Mason*, the ten-year-old plaintiff entered a roadway near his school and, while in the intersection, was struck by a vehicle running a red light. *Id.* at 132-133. He sued the Wayne County Board of Commissioners to recover for his injuries on the theory that the board should have provided signs warning drivers that a school was nearby. *Id.* This Court found that the highway exception did not apply and that the plaintiff's suit was barred by governmental immunity. *Id.* at 138. The holding was based on a finding that "[t]he highway exception specifically excepts the state and counties from liability for defects in cross-

---

[1] 447 Mich 130, 135, n 4; 523 NW2d 791 (1994).

walks, the defect alleged by the plaintiff . . . ." *Id.* at 135.

In a footnote in *Mason*, this Court stated:

> It is true that "[a]ny person" may recover, but only for injuries that result from vehicular accidents. If a defect in the improved portion of the highway causes a traffic accident, any person injured as a result of that accident may recover, including injured passengers or pedestrians, if any, and the owner of the vehicle. [*Id.* at 135, n 4.]

The issue in *Mason* was whether the highway exception applies to a pedestrian injured in a crosswalk, not whether pedestrians in other locations can recover under the exception. Therefore, I regard footnote 4 as mere dictum.

In *Gregg*, however, the defendant argued that the highway exception did not apply to nonmotorists.[2] *Id.* at 310-311. We rejected the argument because the highway exception expressly includes "any person sustaining bodily injury or damage to his property . . . ." *Id.* at 311. Thus, *Gregg* stands for the proposition that the highway exception allows injured pedestrians and the occupants of motor vehicles to recover. The injuries must have been caused by the failure of county road commissions or the state to maintain the improved portion of a highway designed for vehicular travel.

In this case, the trial court erred when it rejected the holding *of Gregg* in favor of dictum from *Mason*. I agree with the majority that the trial court should not

---

[2] The plaintiff in *Gregg* was injured while riding his bicycle on the shoulder of highway M-35. The bicycle overturned when it struck a pothole. *Id.* at 309.

have granted the defendant's motion for summary disposition.

II. *EVENS v SHIAWASSEE COUNTY ROAD COMMISSIONERS*

However, I disagree with the conclusion in *Evens* that MCL 691.1402(1); MSA 3.996(102)(1) establishes an exception to governmental immunity involving only traveled portions of a roadbed actually designed for vehicular travel. This interpretation is myopic in that it fails to place MCL 691.1402(1); ˙MSA 3.996(102)(1) in its proper statutory framework. It is erroneous, also, because the majority inserts its own meaning of the words "improved portion of the highway designed for vehicular travel.

A. THE WORDS "IMPROVED PORTION
OF THE HIGHWAY DESIGNED FOR VEHICULAR TRAVEL"
REFER TO MORE THAN JUST THE ROADBED

Had the Legislature intended to impose liability on county road commissions and the state for defects in the surface of roads, alone, it could have and would have said so. The plain meaning of the words "improved portion of the highway designed for vehicular travel" connotes a broader concept than just the surface of the road, itself.

The primary goal of statutory interpretation is to give effect to the controlling intent of the Legislature. *Lorencz v Ford Motor Co*, 439 Mich 370, 376-377; 483 NW2d 844 (1992). "When determining legislative intent, statutory language should be given a reasonable construction considering its purpose and the object sought to be accomplished." *Wills v Iron Co*

*Bd of Canvassers*, 183 Mich App 797, 801; 455 NW2d 405 (1990).

As the majority hints, this Court has long struggled with the outrageously imperfect language of the highway exception to governmental immunity. *Ante*, p 167. That long struggle, alone, supports the conclusion that the language of the highway exception is far from plain.[3] However, the majority asserts that the language of the statute is "plain," in the sense that it lacks ambiguity.

I differ with the majority's conclusory assertion that the statutory phrase "improved portion of the highway designed for vehicular travel" has a plain meaning wilfully disregarded by this Court in *Pick v Szymczak*, 451 Mich 607; 548 NW2d 603 (1996). Standing alone, the phrase does not specify that the improved portion of the highway designed for vehicular travel includes only the surface of the highway. For example, it leaves uncertain whether the space above the highway containing traffic lights is included.

Because it does not, the words "improved portion of the highway designed for vehicular travel" might include traffic control devices. Beyond dispute, they constitute an improvement, inasmuch as they are placed on or above the highway by a government agency to improve vehicular travel.

As we noted in *Pick*, vehicles do not travel "solely on the two-dimensional length and width of the roadway," but in three dimensional space. *Id.* at 622-623.

---

[3] See *People v Warren*, 462 Mich 415; 615 NW2d 691 (2000). ("The Court's varied readings of the personal wrong exception to the spousal privilege in the opinions discussed here bear witness to the ambiguous language of the exception.")

And for obvious reasons, it is impossible to place traffic control devices on the roadbed that the vehicles touch while traveling.

Provisions of the Motor Vehicle Code support the conclusion that the Legislature envisioned traffic control devices as an integral part of the highway itself:

> The state highway commission shall place or require to be placed and maintain or require to be maintained such traffic control devices, conforming to said manual and specifications, *upon* all state highways as it shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn or guide traffic. [MCL 257.609(a); MSA 9.2309(a) (emphasis added).]

The county road commission has a similar duty:

> Local authorities and county road commissions in their respective jurisdictions shall place and maintain such traffic control devices *upon* highways under their jurisdiction as they may deem necessary to indicate and carry out the provisions of this chapter or local traffic ordinances or to regulate, warn or guide traffic. All such traffic control devices hereafter erected shall conform to the state manual and specifications. [MCL 257.610(a); MSA 9.2310(a) (emphasis added).][4]

---

[4] The majority argues that these sections give the state highway commission and county road commissions discretion in determining how traffic control devices are installed and maintained. It seems to conclude that their discretion is complete. Therefore, a finding that the governmental immunity act imposes liability for the failure to maintain these devices in a condition reasonably safe for vehicular travel would disturb this discretion. But, the majority reaches this conclusion simply by failing to give weight to the language that follows the phrase "deem necessary." *Ante*, p 182, n 36. The county road commission and the state shall place and maintain traffic control devices as they deem necessary "to indicate and to carry out the provisions of this chapter [and local traffic ordinances, in the case of county road commissions] or to regulate, warn or guide traffic." MCL 257.609(a); MSA 9.2309(a). MCL 257.610(a); MSA 9.2310(a). Thus, the county road commissions' and the state's discretion is not as complete as the majority would lead one to believe. Holding that the high-

The Legislature's use of the word "upon" indicates that traffic control devices are on, not off highways. The Legislature appears to have intended that they become a part of the highway itself. Since we cannot determine from the phrase alone whether it includes improvements such as traffic devices, it is appropriate to analyze the provisions of the governmental immunity act as a whole.

### B. THE STATUTORY SCHEME OF THE GOVERNMENTAL IMMUNITY ACT

In *Ross v Consumers Power Co (On Rehearing)*,[5] we recognized that the governmental immunity act was intended to provide uniform liability and immunity to both state and local government agencies. The preamble to the act notes that it is

> an act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, officers, employees, and volunteers thereof, and members of certain boards, councils, and task forces when engaged in the exercise or discharge of a governmental function, for injuries to property and persons; to define and limit this liability . . . .

The highway exception is § 2 of the governmental immunity act, MCL 691.1402(1); MSA 3.996(102)(1). In it, the Legislature placed a general duty on "each governmental agency having jurisdiction over a highway" to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel

---

way exception to governmental immunity includes traffic control devices does not interfere with the placement and maintenance of these devices to effectively regulate, guide and warn traffic.

[5] 420 Mich 567, 614; 363 NW2d 641 (1984).

. . . ." The next sentence imposes liability on a government agency having jurisdiction over a highway for failure "to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel . . . ." Thus, liability not only extends to highways in a state of disrepair, but to those in a condition not reasonably safe and fit for travel.

The majority concludes that the Legislature did not intend to include traffic control devices within the purview of the highway exception. To reach that conclusion, it reads the first and second sentence of MCL 691.1402(1); MSA 3.996(102)(1) *separately*. The result is that it contradicts the Legislature's clear intent and renders the second sentence nugatory.

The second sentence of MCL 691.1402(1); MSA 3.996(102)(1) provides:

> A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.

In this sentence, the Legislature expressly provides that persons who are injured because a government agency failed to keep a highway "in reasonable repair *and* in a condition reasonably safe and fit for travel" may recover damages from that agency. The majority quotes Justice RILEY's dissent in *Pick*, asserting that a duty to keep the highway in a condition reasonably safe for travel does not exist. However, the assertion is refuted by the second sentence of the highway exception, itself. It is illogical to conclude that the

Legislature would impose liability where there is no duty.

It is a maxim of statutory construction that every word in a statute should be read to give the word meaning. Also, a court should avoid a construction that would render any part of a statute surplusage or nugatory. *In re MCI Telecommunications*, 460 Mich 396, 414; 596 NW2d 164 (1999); *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). The majority violates these principles by reading the first sentence of the highway exception, but ignoring the second. It renders meaningless the Legislature's intent to allow damages to those injured when a government agency fails to keep a highway under its jurisdiction reasonably safe for public travel.

Keeping the highway in a condition reasonably safe for public travel includes maintaining traffic control devices in working order. The majority maintains that traffic control devices are not implicated in the definition of "highway" under the highway exception to the governmental immunity act. I disagree.

Under subsection 1(e) of the governmental immunity act, MCL 691.1401(e); MSA 3.996(101)(e),

"Highway" means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles.

As the majority concedes, this definition of "highway" is broad. *Ante*, p 175, n 30. In defining it, the Legislature specifies what is excluded: alleys, trees, and utility poles. Notably, it did not exclude traffic control devices. The majority usurps the Legislature's

role by adding traffic control devices to the list of exclusions.

This broad definition of "highway" explains the presence of the fourth sentence of MCL 691.1402(1); MSA 3.996(102)(1):

> The duty of the state and county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

This sentence relieves county road commissions and the state from liability for installations outside the improved portions of the highway. But the Legislature did not completely bar recovery when an individual is injured because of a defect in "a portion of a county highway outside of the improved portion of the highway designed for vehicular travel, including a sidewalk, trailway, crosswalk or other installation." MCL 691.1402a(1); MSA 3.996(102a)(1).

Instead, the act places liability for those accidents on municipal corporations. MCL 691.1402a(1); MSA 3.996(102a)(1). If a municipal corporation knew about a defect thirty days before a plaintiff's injury and the defect is the proximate cause of the injury, then the corporation is liable.[6] MCL 691.1402a(1)(a) and (b); MSA 3.996(102a)(1)(a) and (b).

---

[6] Section 2a of the governmental immunity act was added recently. 1999 PA 205. It codified the notice provision and the "two inch rule," thereby limiting municipalities' liability for sidewalks, trailways, crosswalks, and other installations outside the improved portion of the highway. Before the enactment of 1999 PA 205, municipalities were required to keep sidewalks and the like in "reasonable repair" by virtue of MCL 691.1402(1);

Under the statutory scheme created by the governmental immunity act, state and county road commissions are liable for defects *in* the improved portion of the highway designed for vehicular travel. MCL 691.1402(1); MSA 3.996(102)(1). When a municipal corporation knows or should know about the existence of a defect outside the improved portion of the highway, it is liable for injuries caused by the defect. MCL 691.1402a; MSA 3.996(102a).

Maintaining traffic control devices is a governmental function delegated to county road commissions and the state. MCL 257.609(a); MSA 9.2309(a), MCL 257.610(a); MSA 9.2310(a). The governmental immunity act was intended to make uniform the liability of government agencies when, in the discharge or exercise of certain government functions, persons were injured. One of the functions is maintaining highways in reasonable repair and in a condition reasonably safe and convenient for public travel. Hence, the act includes the highway exception, which is found at MCL 691.1402(1); MSA 3.996(102)(1).

Defective traffic control devices make highways hazardous for vehicular traffic. It is therefore logical to conclude that the Legislature intended to include traffic control devices in the duty to maintain highways in a condition reasonably safe for public travel. However, the majority has decided that traffic control devices are located outside the improved portions of roads, shifting liability for defective control devices to municipal corporations.

---

MSA 3.996(102)(1) and its predecessors. See *Weisse v Detroit*, 105 Mich 482; 63 NW 423 (1895); *Glancy v Roseville*, 457 Mich 580, 584; 577 NW2d 897 (1998).

I find this conclusion illogical, particularly when county road commissions and the state have the duty to place and maintain traffic control devices on highways. MCL 257.609(a); MSA 9.2309(a); MCL 257.610(a); MSA 9.2310(a). Shifting liability for defective traffic control devices to municipal corporations when it is the county road commissions or the state that have the duty to maintain them is simply senseless.

### C. PUBLIC POLICY CONSIDERATIONS

In support of its construction of MCL 691.1402(1); MSA 3.996(102)(1), the majority points to certain public policy considerations. Specifically, it is concerned about the costs taxpayers might sustain if we determine that the use and maintenance of traffic control devices are part of keeping highways safe for public travel.

Contrary to the majority's predictions, the inclusion of traffic control devices would not make county road commissions and the state responsible for every instance of injury arising from automobile accidents. Instead, they would be liable only for injuries caused by their failure to maintain the improved highways in a condition *reasonably safe* for vehicular travel.

In terms of public policy, one could argue that the taxpayers desire the reasonable use of traffic control devices to make roads safer. One could also argue that they intend compensation for those injured when an agency fails to keep roads safe, as expressly provided in the second sentence of the highway exception.

There has been no evidence that, "before *Pick*, a dearth of traffic control devices existed, creating unsafe highways . . . ." *Ante*, p 178, n 34. By the same token, there is no evidence that, since *Pick* in 1996, state coffers have been drained by a flood of lawsuits alleging injuries from unsafe traffic control devices.[7] Indeed, if it were the case that *Pick* resulted in an unbearable financial strain on the state, then surely the Legislature would have rewritten the governmental immunity act.[8]

### III. CONCLUSION

*Pick* does not contradict the plain meaning of MCL 691.1402(1); MSA 3.996(102)(1). Rather, the interpretation proffered by the majority today offends the statutory scheme set in place by the Legislature. Moreover, it offends principles of statutory construction, the doctrine of stare decisis, and common sense.

In *Ross*, we provided that exceptions to the governmental immunity act should be construed narrowly; however, it does not follow that they should be construed in contravention of the stated intent of the Legislature.

It appears that the majority is straining in making the statutory interpretation in *Evens*. It has improp-

---

[7] The majority lists seven cases brought as "ample evidence" that the state has been burdened by lawsuits alleging unsafe traffic control devices since *Pick* was decided in 1996. *Ante*, p 178, n 34. Of them, only five allege unsafe or inadequate traffic control devices. Five do not constitute a flood of lawsuits.

[8] In 1999, the Legislature revised the government immunity act, including the provisions at issue here. MCL 691.1402(1); MSA 3.996(102)(1). Notably, the Legislature did not revise the highway exception to exclude traffic control devices, despite *Pick*'s 1996 holding that traffic control devices are included within the exception.

erly interpreted the words "improved portion of the highway designed for vehicular travel" to include only the surface of the road. If the Legislature did so intend, it could have and, presumably, would have said "surface of the road."

More problematic is the majority's analysis of the words "improved portion of the highway designed for vehicular travel." It distorts the governmental immunity act by shifting to municipalities liability for defective traffic control devices. It does so despite the Legislature's delegation of the duty to maintain these devices to county road commissions and to the state.

Throughout this judicial term, I have been dismayed by the majority's disregard of precedent laid down by the Court in years past. See *Robinson v Detroit*, 462 Mich 439, 475-477; 613 NW2d 307 (2000) (KELLY, J., dissenting). This case is yet another example.

CAVANAGH, J., concurred with KELLY, J.