PADDOCK v TUSCOLA & SAGINAW BAY RAILWAY COMPANY, INC

Docket No. 192854. Submitted March 4, 1997, at Lansing. Decided September 26, 1997, at 9:05 A.M. Leave to appeal sought.

Barbara L. Paddock, as personal representative of the estate of Brian G. Paddock, brought an action in the Wexford Circuit Court against Tuscola & Saginaw Bay Railway Company, Inc., the Wexford County Board of County Road Commissioners, two employees of the railroad, and one employee of the road commission, alleging negligence and gross negligence relating to the decedent's death in a collision between his automobile and a train of the railroad at a railroad crossing on a highway over which the road commission had jurisdiction. The court, Charles D. Corwin, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. Federal law preempts the plaintiff's claim that the railroad had a duty under state law to stop its train and deploy a flagman to warn motorists of the presence of the train. As held in *CSX Transportation, Inc v Easterwood*, 507 US 658; 113 S Ct 1732; 123 L Ed 2d 387 (1993), state-law tort claims based on train speed are preempted by federal law, but state-law tort claims based on the duty to slow or stop a train to avoid a specific, individual hazard are not preempted by federal law. A dangerous railroad crossing, like that alleged in this case, does not constitute a specific, individual hazard. Accordingly, federal law preempts the plaintiff's state-law claim that the railroad should have deployed a flagman.

2. The railroad did not have a duty to petition the road commission to install additional warning devices at the crossing. MCL 257.668(2); MSA 9.2368(2) permits as a basis for a claim of negligence against the state transportation department, a county road commission, a railroad, or local authorities the erection of or failure to erect, replace, or maintain a stop or yield sign or other railroad warning device when such devices or signs were ordered by public authority. In this case, no public authority ordered the erection of additional warning devices at the crossing. Accordingly, the railroad was under no duty to erect additional warning devices or to petition the road commission for the erection of additional warning devices.

3. The railroad did not have a duty to request the road commission to establish a clear vision area at the crossing. Under MCL 462.317; MSA 22.1263(317) it is the governmental entity having authority over the particular highway that is responsible for determining the need for a clear vision area. Where the duty to take corrective action at a railroad crossing lies with the governmental entity with jurisdiction over the highway, and not with the railroad, the railroad has no duty to petition the road authority for the creation of a clear vision area at the crossing.

4. Pursuant to MCL 257.668(2); MSA 9.2368(2), the road commission could not be held liable for failing to erect additional warning devices at the crossing because the erection of such devices had not been ordered by public authority.

5. The road commission did not have a duty to establish a clear vision area or to clear vegetation obstructing motorists' view at the crossing. The road commission's duty to maintain the highway in reasonable repair under MCL 691.1402; MSA 3.996(102), the highway exception to governmental immunity, does not extend to clearing vegetation. The duty to maintain a highway so that it is reasonably safe for public travel includes the duty to erect adequate warning signs or traffic control devices at points of hazard. A point of hazard is a condition that uniquely affects vehicular travel on the improved portion of the roadway, as opposed to a condition that generally affects the roadway and its surrounding environment. In this case, the vegetation at the crossing was not a point of hazard; the point of hazard was the crossing itself, and there were adequate signs and devices indicating the presence of the crossing.

6. The trial court did not err in determining that the absence of pavement markings at the crossing, which had been ordered by the Department of Transportation, was not a proximate cause of the accident. The evidence indicated that the decedent was familiar with the crossing, negotiated it on the way to and from work, and lived near it for ten years. The additional pavement markings would not have provided the decedent with additional information about the crossing that would have prevented the accident.

7. The trial court did not err in granting summary disposition for those defendants who were employees of the railroad or the road commission. Those defendants did not owe an actionable duty to the decedent in light of the absence of any duty owed to the decedent by their employers.

Affirmed.

1. RAILROADS — CROSSINGS — FEDERAL PREEMPTION OF STATE-LAW TORT CLAIMS.
State-law tort claims based on train speed are preempted by federal law, but state-law tort claims based on the duty to slow or stop a

train to avoid a specific, individual hazard are not; a railroad crossing does not constitute a specific, individual hazard, and federal preemption of a state-law claim is not avoided by alleging that a crossing was extrahazardous.

2. RAILROADS — CROSSINGS — WARNING DEVICES.

A railroad has no duty to erect warning devices at a railroad crossing or to petition the governmental entity that has jurisdiction over the particular highway to erect such devices unless the erection of warning devices has been ordered by a public authority (MCL 257.668[2]; MSA 9.2368[2]).

3. RAILROADS — CROSSINGS — CLEAR VISION AREAS.

The need for a clear vision area at a railroad crossing must be determined by the governmental entity with jurisdiction over the particular highway, and not by the railroad involved; the railroad has no duty to petition the governmental entity for the creation of a clear vision area (MCL 462.317; MSA 22.1263[317]).

4. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — RAILROAD CROSSINGS — VEGETATION.

Vegetation that is near a railroad crossing and that obstructs motorists' view at the crossing is not part of the improved portion of the highway for which the governmental entity with jurisdiction over the highway may be held liable under the highway exception to governmental immunity for failing to clear the vegetation (MCL 691.1402; MSA 3.996[102]).

5. NEGLIGENCE — PROXIMATE CAUSE.

The issue of proximate cause in a case set for jury trial may be decided by the court, rather than by the jury, when the facts bearing upon proximate cause are not in dispute and reasonable persons could not differ about the application of the legal concept of proximate cause to those facts.

*Dingeman, Dancer & Christopherson, P.L.C.* (by *James A. Christopherson*), for Barbara L. Paddock.

*Hackett, Maxwell & Phillips, P.L.L.C.* (by *Phillip B. Maxwell* and *Mark T. Butler*), for Tuscola & Saginaw Bay Railway Corporation, Inc., Larry McCloud, and Raymond J. Robinson.

*Highland & Zanetti, P.C.* (by *John N. Highland*), for Wexford County Board of County Road Commissioners and Patrick McCormick.

Before: FITZGERALD, P.J., and MACKENZIE and TAYLOR, JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7), (8), and (10). We affirm.

Plaintiff's decedent was killed when the car he was driving was struck by a train operated by defendant Tuscola & Saginaw Bay Railway Company, Inc., at a railroad crossing on County Road 14 in Wexford County, a highway over which defendant Wexford County Board of County Road Commissioners had jurisdiction. The decedent's wife testified that he often took the road to work and that he had driven over the railroad crossing "many, many" times. She also stated that it was the decedent's custom to slow down "almost to a stop" every time he approached the crossing. The only eyewitnesses to the crash, however, testified that the decedent's car did not slow down at all before the collision. The record indicates that the crossing was marked with a railroad crossbuck sign and a yield sign, but no pavement marking or gate. The record also indicates that, before the engineer or the conductor saw the decedent's vehicle, the train's engineer blew the whistle and rang the bell as the train neared the crossing.

Plaintiff's complaint alleged that the crossing was "extra hazardous" and that "vegetation at the accident site obstructed the view" of motorists. The complaint further alleged both negligence and gross negligence,

including the railroad's failure to (1) maintain a proper lookout at the crossing and (2) warn the public of the hazard, as well as the road commission's failure to (1) warn the public of the hazard, (2) clear the obstructing vegetation, and (3) paint appropriate pavement markings at the crossing. The trial court granted summary disposition with regard to each of these claims.

We initially address plaintiff's arguments concerning the railroad. Plaintiff first contends that because of the hazardous nature of the crossing, the railroad had a duty to stop its train and deploy a flagman in order to warn drivers of the train's presence. We conclude that this claim is preempted by federal law.

In *CSX Transportation, Inc v Easterwood*, 507 US 658; 113 S Ct 1732; 123 L Ed 2d 387 (1993), the United States Supreme Court held that state-law tort claims based on train speed are preempted by federal law. The Court, however, specifically went on to note that its holding did not address the federal preemption of state tort-law duties, such as the duty "to slow or stop a train to avoid a specific, individual hazard." *Id.*, 507 US 675, n 15. Since *Easterwood* was decided, other courts have held that an allegedly dangerous railroad crossing itself does not constitute a "specific, individual hazard," and that, under *Easterwood*, federal law preempts state law regarding a railroad's duty to slow a train for an extrahazardous crossing. Thus, in *Bowman v Norfolk S R Co*, 832 F Supp 1014, 1017-1018 (D SC, 1993), the court rejected a claim that state law was not preempted because the crossing at issue presented a hazard. Likewise, in *Wright v Illinois C R Co*, 868 F Supp 183, 187 (SD Miss, 1994), the court held that the plaintiffs could not avoid federal pre-

emption of their state tort claim by alleging that a
railroad crossing was " 'extrahazardous' because of
'vegetation, grade and angle of the crossing, and inad-
equate warnings' " because accepting such an argu-
ment would "swallow the clear intent [that applicable
federal law should] preempt state law." A similar
result was reached in *Armstrong v Atchison, T, & S F
R Co*, 844 F Supp 1152, 1153 (WD Tex, 1994), where
the court held that "[t]he 'specific, individual hazard'
identified by the *Easterwood* court logically relates to
the avoidance of a specific collision" and not to a par-
ticular grade crossing. Most recently, in *Bakhuyzen v
Nat'l Rail Passenger Corp*, 1996 US Dist LEXIS 1884,
*9-10 (WD Mich, 1996), the court concluded that the
plaintiffs' allegations that a train "should have slowed
due to the obstructed view, the lack of crossing pro-
tections and [the engineer's] knowledge that this was
a dangerous crossing all come within the reasoning of
the *Easterwood/Bowman* line of cases and are pre-
empted" by federal law.

Applying these cases, plaintiff's claim, that the
crossing itself was a "specific, individual hazard" that
the railroad owed a duty to avoid, is preempted under
federal law. The claim that the railroad owed a duty
to deploy a flagman at the crossing must fail as well.
As the trial court reasoned, if a train cannot be com-
pelled to slow down as it approaches a crossing, it
also cannot be compelled to stop altogether in order
to deploy a flagman. Summary disposition was prop-
erly granted with regard to this issue.

Plaintiff next argues that the trial court erred in rul-
ing that the railroad did not have a duty to petition
the road commission to install warning devices at the
crossing. An identical claim was considered and

rejected by this Court in *Turner v CSX Transportation, Inc,* 198 Mich App 254, 256-257; 497 NW2d 571 (1993), in which this Court essentially held that, where a railroad has no duty to do a certain act, it also has no duty to petition for someone else to do the act. The *Turner* Court began its analysis by quoting MCL 257.668(2); MSA 9.2368(2), which provides in pertinent part:

> The state transportation department with respect to highways under its jurisdiction, the county road commissions, and local authorities with reference to highways under their jurisdiction, may designate certain grade crossings of railways by highways as yield crossings, and erect signs at the crossings notifying drivers of vehicles upon the highway to yield. . . . *The erection of or failure to erect, replace, or maintain a stop or yield sign or other railroad warning device, unless such devices or signs were ordered by public authority, shall not be a basis for an action of negligence against the state transportation department, county road commissions, the railroads, or local authorities.* [Emphasis added.]

The *Turner* Court then continued:

> In the case at bar, there was no order by a public authority directing that additional warning devices or signals be installed. Thus, CSX cannot, under the clear and unambiguous language of the statute, be held liable for the failure to erect additional warning devices or signals. *Baughman v Consolidated Rail Corp,* 185 Mich App 78, 80; 460 NW2d 895 (1990).
>
> Plaintiff also argues that CSX may be liable because it had a common-law duty to petition the proper government entity for the authority to install additional warning devices. The case cited by plaintiff, *Harrison v Grand Trunk W R Co,* 162 Mich App 464, 468; 413 NW2d 429 (1987), does stand for that proposition. However, we are persuaded that *Harrison* was incorrectly decided. In our view, in enacting

the statute, the Legislature intended that no liability was to be premised upon the absence of warning devices at a railroad crossing absent an order by the proper authority to install devices and a failure to follow that order. Under MCL 257.668; MSA 9.2368, as well as MCL 257.615(a); MSA 9.2315(a), the duty to determine the appropriate warning devices to be installed at railroad crossings lies with the appropriate governmental entity with jurisdiction over the roadway, not with the railroad. With these points in mind, we conclude that a railroad has no duty to petition the appropriate governmental entity for the installation of warning devices at a railroad crossing. See *Kesslering v Chesapeake & O R Co*, 437 F Supp 267, 269 (ED Mich, 1977). [198 Mich App 256-257.]

In this case, as in *Turner*, no public authority had ordered the installation of additional warning devices. Therefore, applying *Turner*, we find no error.

Plaintiff also contends that, because the railroad knew that the obstructing vegetation at the crossing made it extra hazardous, the trial court should have found that the railroad had a duty to request that a clear vision area be created to protect the public. We conclude that the rationale of *Turner, supra*, applies with equal force to this claim, and hence we find no error.

Section 317 of the Railroad Code of 1993, MCL 462.317; MSA 22.1263(317), provides in relevant part:

(1) *If a road authority determines to establish a clear vision area* as described in this section, the railroad and a road authority may agree in writing for clear vision areas with respect to a particular crossing. The portions of the right-of-way and property owned and controlled by the respective parties within an area to be provided for clear vision shall be considered as dedicated to the joint usage of the railroad and the road authority. [Emphasis added.]

Under the plain language of this statute, it is the responsibility of the road authority—not the railroad—to determine the need for a clear vision area. As this Court held in *Turner, supra,* pp 256-257, where the duty to consider corrective actions at a railroad crossing lies with the governmental entity with jurisdiction over the roadway, and not with the railroad, the railroad has no duty to petition the governmental entity to act. Consistent with *Turner,* therefore, we conclude that a railroad has no duty to petition a road authority for the creation of a clear vision area at a railroad crossing. See also *Kesslering, supra.* Summary disposition in favor of defendant railroad was properly granted.

We next turn to plaintiff's claims involving defendant road commission. First, plaintiff contends that under the highway exception to governmental immunity, MCL 691.1402(1); MSA 3.996(102)(1), as construed by the Supreme Court in *Pick v Szymczak,* 451 Mich 607; 548 NW2d 603 (1996), the road commission had a duty to install stop signs or other warning devices at the railroad crossing as part of its duty to maintain its highways reasonably safe for public travel. This claim is without merit. MCL 257.668(2); MSA 9.2368(2), quoted above, clearly states that county road commissions will be immune from liability for failure to erect warning signs at railroad intersections "unless such devices or signs were ordered by public authority." When a plaintiff's cause of action is brought pursuant to the highway exception to governmental immunity and is grounded on the absence of signs or other warning devices, MCL 257.668(2); MSA 9.2368(2) acts as a bar to that cause of action. *Taylor v Lenawee Co Bd of Co Rd Comm'rs,* 216 Mich

App 435, 438-440; 549 NW2d 80 (1996). In this case, it was uncontroverted that no signs or warning devices had been ordered by any public authority. Thus, under MCL 257.688(2); MSA 9.2368(2), the trial court did not err in finding that the road commission was not liable for failing to erect warning signs or other warning devices at the crossing. *Taylor, supra,* p 440.

Plaintiff further contends that the road commission had a duty to establish a clear vision area at the railroad crossing, or to clear vegetation obstructing motorists' view at the crossing. The road commission, on the other hand, maintains that it is also immune from tort liability with respect to clearing the vegetation. Like the trial court, we agree with the road commission.

In *Cryderman v Soo Line R Co,* 78 Mich App 465, 476-477; 260 NW2d 135 (1977), this Court ruled that a road commission's duty to keep its highways reasonably safe and fit for travel under the highway exception to governmental immunity, MCL 691.1402; MSA 3.996(102), includes trimming vegetation lying beyond the improved portion of the highway. Clearly, under *Cryderman,* the trial court's grant of summary disposition in favor of defendant highway commission would have been improper. However, *Cryderman* was essentially overruled by the Supreme Court in *Prokop v Wayne Co Bd of Rd Comm'rs,* 434 Mich 619, 633; 456 NW2d 66 (1990). In *Prokop,* the plaintiff, relying on *Cryderman,* contended that the road commission's duty to maintain highways in reasonable repair under MCL 691.1402; MSA 3.996(102) extends to the clearing of vegetation obstructing motorists' view of an intersection. The Supreme Court rejected the plaintiff's argument and held that the road commis-

sion was immune from liability for its failure to remove the vegetation. The Court reasoned that the vegetation "had no connection with the roadbed or public travel thereon." 434 Mich 635.

More recently, the Supreme Court, reexamined the highway exception to governmental immunity, MCL 691.1402; MSA 3.996(102), in *Pick*, *supra.* There, the Court held that the duty to maintain highways reasonably safe for public travel under the statute "includes the duty to erect adequate warning signs or traffic control devices at a 'point of hazard' (or a 'point of special danger')." 451 Mich 621. To be a point of hazard for purposes of the highway exception, "the condition must be one that uniquely affects vehicular travel on the improved portion of the roadway, as opposed to a condition that generally affects the roadway and its surrounding environment." *Id.*, 623. Under *Pick*, the conditions constituting a "point of hazard" need not be part of the roadbed itself. *Id.*

The *Pick* decision was limited to the legal question whether the highway exception to governmental immunity encompasses a duty to warn of hazards to travel. See 451 Mich 615, n 6. It specifically did not address the duty to trim or remove vegetation. *Id.*, n 5. Rather, the Court stated that "we expressly hold that a duty to provide adequate warning signs or traffic control devices at known points of hazard arises under the highway exception" to governmental immunity. 451 Mich 619.

In this case, we are satisfied that the *vegetation* at the railroad crossing was not a "point of hazard" as that term was defined in *Pick*, but rather was "a condition that generally affects the roadway and its surrounding environment." 451 Mich 623. Instead, the

point of hazard involved in this case—similar to the point of hazard in *Pick*—was the *intersection* of the road and the railroad tracks. Thus, the duty imposed under *Pick* was the duty to warn motorists, by installation of a sign or other warning device, of the existence of the railroad crossing. In this case, it was uncontroverted that a yield sign and a railroad crossbuck sign were installed at the crossing. Further, it was uncontroverted that, in addition to this visual warning, the railroad provided an audible warning; the train sounded its bell and whistle signaling its approach toward the intersection. Under these circumstances, the trial court did not err in concluding that the road commission was immune from tort liability under the highway exception. The vegetation was not a "point of hazard" as defined in *Pick* and signs warning of the relevant "point of hazard"—the crossing—were present.

Plaintiff next contends that a jury should have been allowed to determine if the absence of clearly visible pavement markings, which had been ordered by the Department of Transportation, was a proximate cause of the accident causing the death of her husband. We disagree. When the facts bearing upon proximate cause are not in dispute and reasonable persons could not differ about the application of the legal concept of proximate cause to those facts, the court determines the issue. *Hagerman v Gencorp Automotive (On Remand)*, 218 Mich App 19, 24-25; 553 NW2d 623 (1996), quoting Prosser & Keeton, Torts (5th ed), § 45, p 321. Here, as noted by the trial court, it was uncontroverted that plaintiff's husband knew of the existence of the railroad crossing and was familiar with its configuration; he frequently drove across the

tracks on his way to and from work and had lived less than a mile from the crossing for ten years. Accordingly, reasonable persons would have to conclude that an "R X R" or a line freshly painted on the roadway would not have provided plaintiff's husband with additional information about the crossing that would have prevented the accident. Summary disposition in favor of the road commission with regard to this claim was therefore proper.

Finally, plaintiff contends that the jury should have been allowed to determine whether the individual defendants—corporate officers of the railroad and a former road commission manager who were not present when the accident occurred—were negligent. Having found that the railroad and the road commission owed no duty to plaintiff's husband, their officials must also be deemed to have owed him no duty. See *Reese v Wayne Co*, 193 Mich App 215, 218-219; 483 NW2d 671 (1992). Accordingly, we find no error in granting summary disposition in favor of the individual defendants.

Affirmed.