JONES v DETROIT MEDICAL CENTER

Docket No. 288710. Submitted March 2, 2010, at Detroit. Decided May
20, 2010, at 9:00 a.m.

Trenda, Booker T., and Margaret A. Jones, copersonal representa-
tives of the estate of Jamar C. Jones, deceased, brought a medical
malpractice action in the Wayne Circuit Court against Detroit
Medical Center and Sinai-Grace Hospital, Danny F. Watson, M.D.,
and William M. Leuchter, P.C., alleging, in part, that Watson was
negligent for prescribing carbamazepine, an anticonvulsant, for
Jamar without a sufficient basis to diagnose a seizure disorder and
that Watson failed to advise Jamar of the possibility of an allergic
reaction to the medication, of the warning signs of such a reaction,
and of the need to obtain immediate medical intervention if an
allergic reaction occurred. Jamar's death occurred after he devel-
oped Stevens-Johnson syndrome from taking the carbamazepine.
The trial court, Robert L. Ziolkowski, J., granted plaintiffs' motion
for partial summary disposition with regard to the issue of cause in
fact, holding that there was no dispute that the carbamazepine
taken by Jamar was the cause in fact of Jamar's developing
Stevens-Johnson syndrome. The trial court also denied defen-
dants' motion for summary disposition. Defendants appealed the
denial of their motion but not the grant of summary disposition in
favor of plaintiffs on the issue of cause in fact. The Court of
Appeals reversed the order denying defendants' motion for sum-
mary disposition and remanded the case to the trial court in an
unpublished opinion per curiam, issued January 4, 2007 (Docket
Nos. 262343, 262347, and 263259). The Supreme Court, in lieu of
granting leave to appeal, reversed the judgment of the Court of
Appeals, reinstated the trial court's order denying defendants'
motion, and remanded the case to the trial court. 480 Mich 980
(2007). On remand, the trial court considered the parties' motions
for partial summary disposition with regard to the issue of
proximate causation and granted partial summary disposition in
favor of plaintiffs with regard to the issue of proximate cause.
Detroit Medical Center and Sinai-Grace Hospital sought leave to
appeal that order, and the Court of Appeals granted leave to appeal

in an unpublished order, entered December 30, 2008 (Docket No. 288710). The other defendants timely filed a cross-appeal.

The Court of Appeals *held*:

1. It was proper for the trial court to determine proximate causation as a matter of law because the trial court had already decided the cause in fact and the facts bearing on the proximate-cause determination were not in dispute and, therefore, reasonable minds could not differ about the application of the legal concept of proximate causation to those facts.

2. The relevant issue was not whether defendants should have foreseen that Jamar would develop Stevens-Johnson syndrome, but whether defendants should have foreseen the possibility that as a result of taking carbamazepine, Jamar, like any other patient being prescribed the medication, bore a risk of developing the syndrome. Because the prescribing information for carbamazepine contained warnings that Stevens-Johnson syndrome might result from the use of the drug, it was foreseeable that prescribing the drug created a risk that Jamar could contract Stevens-Johnson syndrome. Reasonable minds cannot differ that, if a physician prescribes a medication, it is reasonably foreseeable that doing so could cause the patient to have one of the known reactions to that medication.

3. There was no disagreement that it was Jamar's taking of the carbamazepine prescribed by Watson that caused Jamar to develop Stevens-Johnson syndrome. Because it appears undisputed that Jamar died as a result of contracting Stevens-Johnson syndrome, which he contracted as a result of taking carbamazepine, and he took the carbamazepine only because he was directed to do so by Watson, all the evidence supports the conclusion that Watson's conduct was a proximate cause of Jamar's Stevens-Johnson syndrome and resulting death.

4. With regard to plaintiffs' theory of proximate causation that Watson failed to advise Jamar of the warning signs of Stevens-Johnson syndrome and what action to take should those warning signs occur, there is a direct link between the alleged violation of the standard of care and the injury, and a reasonable juror could not conclude otherwise.

5. With regard to plaintiffs' theory of proximate causation that Watson negligently diagnosed a seizure disorder and, as a result of that misdiagnosis, Jamar was given carbamazepine, a side effect of which led to his death, the trial court properly concluded that a reasonable juror could not find a failure of proximate cause. Summary disposition in favor of plaintiffs on the issue of proximate causation was appropriate because a reasonable juror could

not conclude that an allegedly negligent diagnosis that was the sole cause for prescribing the injury-causing medication was not a proximate cause of the injury.

6. The trial court properly determined the issue of proximate cause as a matter of law and properly decided, as a matter of law, both that Watson's alleged lack of giving advice regarding signs of a reaction was a proximate cause of Jamar's development of Stevens-Johnson syndrome and that the allegedly negligent diagnosis was a proximate cause of Jamar's development of Stevens-Johnson syndrome.

Affirmed.

HOEKSTRA, P.J., dissenting, stated that reasonable persons could differ regarding whether Jamar's injuries were legally caused by the alleged negligence of defendants. Reasonable minds could differ regarding whether Jamar's injuries were the natural and probable result of Watson's alleged negligence of failing to perform additional diagnostic tests to confirm the preliminary diagnosis of a seizure disorder. Given the rarity of Stevens-Johnson syndrome, it was within the province of the jury to determine whether the connection between Watson's alleged negligence of failing to warn Jamar of an allergic reaction to carbamazepine and Jamar's injuries was of such a nature that it is desirable to hold defendants liable. Judge HOEKSTRA would conclude that the trial court erred by granting summary disposition in favor of plaintiffs on the issue of proximate causation. The order of the trial court granting that motion should be reversed.

1. NEGLIGENCE — PROXIMATE CAUSE.

Proximate cause is a factual question for the jury, but the court determines the issue when the facts bearing on proximate cause are not in dispute and reasonable persons could not differ about the application of the legal concept of proximate cause to those facts.

2. NEGLIGENCE — PROXIMATE CAUSE.

The issue, for purposes of a proximate-cause analysis of foreseeability, is whether the increased risk to the plaintiff is directly linked to the defendant's negligence, not how often the negligence will result in an injury-causing event.

*Fieger, Fieger, Kenney, Johnson & Giroux, P.C.* (by *Victor S. Valenti* and *Thomas M. Lizza*), for Trenda, Booker T., and Margaret A. Jones.

*Tanoury, Nauts, McKinney & Garbarino, P.L.L.C.* (by *Linda M. Garbarino* and *Anita Comorski*), for Detroit Medical Center and Sinai-Grace Hospital.

*Saurbier & Siegan, P.C.* (by *Debbie K. Taylor*), for Danny F. Watson, M.D., and William M. Leuchter, P.C.

Before: HOEKSTRA, P.J., and BECKERING and SHAPIRO, JJ.

SHAPIRO, J. This medical malpractice case returns to this Court a second time, this time for defendants' appeal by leave granted of the trial court's grant of partial summary disposition in favor of plaintiffs on the element of proximate cause. We affirm.

### I. SUMMARY OF FACTS AND PROCEEDINGS

On September 23, 1999, the decedent, Jamar Jones,[1] was involved in a single-vehicle rollover accident in which he suffered contusions and lacerations. Jamar was transported to the emergency room at defendants Detroit Medical Center/Sinai-Grace Hospital (the hospital) for treatment. Jamar was referred to defendant Danny F. Watson, M.D., a neurologist, who saw Jamar in the emergency room on September 24, 1999. According to Watson's notes, Jamar could not recall how the accident had occurred, and Jamar stated that over the last few months "family members had told him that on approximately three occasions, he was seen staring blankly and that he was not easily aroused from these spells." On the basis of this information, Watson concluded that Jamar had "[p]robable partial complex seizure disorder" and prescribed Tegretol, an anticon-

---

[1] Because plaintiffs share a last name with the decedent, we will refer to individual plaintiffs and the decedent by their first names.

vulsant. Watson also ordered an electroencephalogram (EEG), which was performed the same day and was reported as normal.

Jamar had the prescription filled with carbamazepine, a generic form of Tegretol,[2] and began taking the medication as prescribed. A subsequent EEG was performed by Watson on October 8, 1999, which, like the first EEG, was reported as normal. However, Watson concluded that he "cannot exclude a seizure disorder" and continued Jamar on the anticonvulsant.

Jamar began to experience a sore throat and had trouble swallowing food around October 9, 1999. On October 11, 1999, Jamar awoke with bloodshot eyes. His father, Booker T. Jones, drove Jamar to work, but returned about an hour later to pick Jamar up because Jamar told his father that he was unable to see. Jamar began to develop a rash and blisters on his face and upper body. Booker took Jamar to the hospital emergency room on October 12, 1999, where Jamar reported the sore throat, inability to eat due to pain, and swollen lips and mouth. Jamar also had a fever.

The hospital kept Jamar overnight and, on October 13, 1999, transferred him to the burn unit at Detroit Receiving Hospital. Doctors there determined that Jamar was suffering a rare allergic reaction to the anticonvulsant and diagnosed him as having Stevens-Johnson syndrome resulting from that reaction. Stevens-Johnson syndrome is a life-threatening dermatological condition in which the top layer of skin dies and is shed. Jamar died of Stevens-Johnson syndrome, complicated by pneumonia, on October 21, 1999.

---

[2] Because a difference between Tegretol and carbamazepine has not been alleged to be relevant to this appeal, the term carbamazepine will be used to refer to the drug prescribed for and taken by Jamar.

On August 19, 2003, plaintiffs filed their complaint alleging, among other things, that Watson was negligent for prescribing carbamazepine, given the lack of a sufficient basis to diagnose a seizure disorder, and that Watson failed to advise Jamar of the possibility of an allergic reaction to the medication, of the warning signs of such a reaction, and of the need to obtain immediate medical intervention should such occur. Plaintiffs also filed claims against the hospital and defendant William M. Leuchter, P.C., based on vicarious liability for Watson's alleged malpractice. Attached to their complaint, plaintiffs provided an affidavit of merit from Dr. Jon Glass, in which he opined that Watson breached the standard of care in the two respects just described.

Plaintiffs requested summary disposition on the issue of cause in fact, arguing that there was no dispute that the carbamazepine was the cause in fact of Jamar's developing Stevens-Johnson syndrome. The trial court granted the motion and that order is not at issue in this appeal. In the same motion, plaintiffs also requested summary disposition on the issue of proximate causation. The trial court took that motion under advisement, but before the trial court issued any ruling, defendants moved for summary disposition, arguing that the statute of limitations barred the suit and that the affidavit of plaintiffs' expert had been improperly notarized. The trial court denied the motion, and defendants appealed. This Court reversed the order denying the motion and remanded the case to the trial court. *Jones v Detroit Med Ctr*, unpublished opinion per curiam of the Court of Appeals, issued January 4, 2007 (Docket Nos. 262343, 262347, and 263259). Our Supreme Court, in lieu of granting leave to appeal, reversed this Court's opinion, reinstated the trial court's order denying the motion, and remanded the case to the trial court. *Jones v Detroit Med Ctr*, 480 Mich 980 (2007).

On remand, plaintiffs renewed their motion for partial summary disposition as to proximate causation. Defendants filed a countermotion, arguing that they were entitled to summary disposition as to proximate causation. The trial court concluded:

> All the experts here indicated that it's a very rare—Stevens-Johnson Syndrome is a very rare but known reaction to—to this drug in certain people. And, apparently, those people can't be identified prior to the taking of the medication.
>
> The argument here by the—by the defense is that this is not foreseeable. Stevens-Johnson's [sic] is not a foreseeable result of—of taking this medication in that it is so rare, one in a million. I guess, there's been some testimony, you know, from one to one hundred thousand to one in a million people that take this medication would—would develop Stevens-Johnson Syndrome.
>
> And that to agree with the plaintiff would be somehow to impose strict liability in—in prescribing this particular medication.
>
> *    *    *
>
> . . . The focus by the defense is Stevens-Johnson Syndrom[e] and the fact that it's rare and unpredictable.
>
> But other not so rare and unpredictable results and—and injuries may result from the use of this medication.
>
> And it's the argument here by the plaintiff that the misdiagnosis and the misprescription of this violated the standard of care and the person wouldn't—the plaintiff [sic] here wouldn't otherwise, have taken this medication. But for the—the negligence and the breach of the standard of care by the defendants.
>
> And, therefore, it was foreseeable that an injury could result. The injury, perhaps, being bloodshot eyes, swelling of the lips, which happened. Other swelling. Some rash, which is much more common, indicated by all the doctors.

And because of his eggshell condition or pre-existing susceptibility to this type of Stevens-Johnson Syndrome that their—that the defendants ought to be responsible under the eggshell plaintiff theory.

And, frankly, it seems to fit in this case. The issue being, you know, whether the prescription was or this medication was appropriate. Whether there was, in fact, negligence.

\* \* \*

[C]ertainly, the argument by the defense that the case ought to be dismissed . . . would be denied on the basis that—that injury was foreseeable.

\* \* \*

. . . I—I think the order is then the issue that will be tried in this case is one of whether or not there was a breach in the standard of care in—in—in prescribing this medication.

The trial court then stayed the case to permit defendants to pursue this issue on appeal. The hospital again sought leave to appeal, which this Court granted on December 30, 2008, in an unpublished order (Docket No. 288710). Watson and Leuchter timely filed their cross-appeal.

## II. STANDARD OF REVIEW

We review de novo a court's determination of a motion for summary disposition. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). Because the parties and the trial court relied on matters outside the pleadings when arguing and deciding, respectively, the motion for summary disposition, we review under the rules applicable to MCR 2.116(C)(10). *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). When reviewing a

motion brought under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group*, 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

### III. ANALYSIS

The sole question before this Court is whether the trial court properly ruled on the issue of proximate cause. On the basis of our review de novo of the evidence, we conclude that it did.

Generally, proximate cause is a factual question for the jury. *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). However, "[w]hen the facts bearing upon proximate cause are not in dispute and reasonable persons could not differ about the application of the legal concept of proximate cause to those facts, the court determines the issue." *Paddock v Tuscola & S B R Co, Inc*, 225 Mich App 526, 537; 571 NW2d 564 (1997). Here, the trial court has already decided the cause in fact and defendants have not appealed that ruling, and the facts bearing on proximate cause are not in dispute. Thus, it was proper for the trial court to determine proximate causation as a matter of law if it found that reasonable minds could not differ. *Id.*

"[L]egal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). "To establish legal cause, the plaintiff must show that it was foresee-

able that the defendant's conduct 'may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable.' " *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997), quoting *Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977).

Defendants argue that the injury in this case, Jamar's development of Stevens-Johnson syndrome, was not foreseeable because it is rare. All the parties and their experts agree that Stevens-Johnson syndrome is rare. However, the issue is not whether defendants should have foreseen that Jamar would develop this syndrome, but whether they should have foreseen the possibility that as a result of taking the medication, Jamar, like any other patient being prescribed the medication, bore a *risk* of developing the syndrome.

The evidence shows that the prescribing information for carbamazepine contained warnings that Stevens-Johnson syndrome may result from the use of the drug. Thus, it was foreseeable that prescribing the drug created a risk, albeit a small one, that Jamar could contract Stevens-Johnson syndrome. *Weymers*, 454 Mich at 648. Indeed, the fact that the drug warnings specifically mention Stevens-Johnson syndrome supports the conclusion that it was a foreseeable risk.

Defendants emphasize that the experts testified that doctors have no way to predict which patients will suffer an allergic reaction to carbamazepine and develop Stevens-Johnson syndrome. However, this is true for all first-time allergic reactions and for many other rare reactions. Indeed, this is true of many more common conditions. Doctors are generally unable to specifically foresee which patients will develop cancer or suffer heart attacks or a stroke, even among those who exhibit some predisposition for the conditions. The

same is true in the context of automobile accidents. While in the great majority of cases, speeding on the highway does not cause an accident, we accept as a matter of course that if the speeding resulted in an accident, the proximate-cause threshold can be met. We are unfamiliar with any body of law that would allow a defendant to argue, let alone a jury to find, that because there are thousands of incidents of speeding that do not result in an auto accident for each incident that does, a defendant's excessive speed in a given case cannot be considered a proximate cause of the given crash. Defendants refer to the standard jury instruction requirement that the resulting injury be a "natural and probable" result of the negligence. Under defendants' view of this instruction, speeding could never be the proximate cause of an accident because it is never "probable" in a specific instance of speeding that it will cause an accident.

We conclude that the question is not whether one can predict which incident of such negligence will cause an accident, but whether there is something innate about the negligence that naturally and probably gives rise to the risk of an accident, i.e., harm. A cause in fact, while related to the ultimate outcome as part of the series of events, need not innately give rise to the risk of the injury-causing event. For example, the fact that a commuter got out of bed in the morning is a cause in fact of any accident that the commuter has on the commute to work that day. However, there is nothing about getting out of bed that innately creates a risk of an automobile accident. By contrast, speeding during the commute, while it may never cause an actual accident, "naturally and probably" gives rise to the risk of an accident and, absent special circumstances, a reasonable juror could not conclude that a speed-related accident was not, at least in part, proximately caused by

the actions of the speeding driver. Similarly, if a driver runs a red light, reasonable minds could not differ that it is reasonably foreseeable that doing so *could* cause a car accident, even if the chances are slim that it will actually do so. The issue, at least for a proximate-cause analysis, is not how often the negligence will result in an injury-causing event, but whether the increased risk is directly linked to the negligence. Therefore, if a physician prescribes a medication, reasonable minds could not differ that it is reasonably foreseeable that doing so could cause the patient to have one of the *known* reactions to that medication.[3]

Thus, the real question is whether the doctor took whatever precautions are necessary to prevent the condition from occurring or to minimize its severity insofar as those precautions are required by the standard of care. As noted above, plaintiffs argue that there was never a sufficient diagnostic basis to conclude that Jamar had a seizure disorder and, therefore, prescribing carbamazepine for him fell outside the standard of care. Plaintiffs also argue that when prescribing carbamazepine, Watson was required to warn about the signs of an allergic reaction and the necessity to obtain immediate medical care if any of those signs should occur and that Watson failed to do so.

Defendants can properly argue that the risk of developing Stevens-Johnson syndrome when taking carbamazepine is so small that it could be prescribed even in the absence of conclusive diagnostic evidence of a seizure disorder. Similarly, defendants can properly argue that the risk is so small that the standard of care did not

---

[3] If, on the other hand, there is debate in the medical community about whether a certain reaction is linked to the use of the medication, reasonable minds could differ about whether the reaction was foreseeable.

require discussing the possibility of the reaction with the patient or directing the patient what to do in the event signs of a reaction appeared. However, these arguments relate to standard of care, not proximate cause.

Defendants also rely on their experts' testimony regarding the difficulty in determining the cause of Stevens-Johnson syndrome. For example, defendants argue that one of their experts testified that Jamar also took Tylenol and Ancef, an antiobiotic, both of which have also been associated with Stevens-Johnson syndrome. However, this evidence relates to cause in fact; that is, defendants are arguing that something other than the carbamazepine could have caused Jamar's Stevens-Johnson syndrome. Because the trial court already determined that the carbamazepine caused Jamar's Stevens-Johnson syndrome and defendants elected not to appeal that determination, these arguments have no bearing on the instant appeal.

In any event, although defendants identify some testimony indicating that there are other possible causes of Stevens-Johnson syndrome, defendants' expert, Dr. Edward Domino, who is board-certified in clinical pharmacology, indicated that he did not dispute that Jamar developed Stevens-Johnson syndrome as a result of taking carbamazepine or that Jamar's death resulted from his developing Stevens-Johnson syndrome. Dr. Domino also stated that "from all the evidence, it appears that [Jamar's development of Stevens-Johnson syndrome] is due to the [carbamazepine]." Defendants' other expert, Dr. Paul Cullis, a neurologist, similarly testified that he had "no reason to dispute" that Jamar's taking of carbamazepine caused his development of Stevens-Johnson syndrome. Thus, regardless of whether it is generally difficult to deter-

mine the cause of Stevens-Johnson syndrome or whether Jamar took other medications that could cause Stevens-Johnson syndrome, the record does not reveal any real disagreement that it was Jamar's taking of the carbamazepine prescribed by Watson that caused him to develop the syndrome. Because it appears undisputed that Jamar died as a result of Stevens-Johnson syndrome, which he contracted as a result of taking carbamazepine, and he took the carbamazepine only because he was directed to do so by Watson, all the evidence supports the conclusion that Watson's conduct was a proximate cause of Jamar's Stevens-Johnson syndrome and resulting death.

For this reason, we reject defendants' reliance on *Domako v Rowe*, 184 Mich App 137; 457 NW2d 107 (1990), in which the plaintiff wife developed a vesicovaginal fistula following a hysterectomy. In that case, the parties disputed whether her injury was the proximate result of the negligent performance of the hysterectomy or was the proximate "result of [a] fibroid tumor pressing against the surface of the bladder which in turn caused the depletion of the blood supply to the affected area of the bladder wall and a consequent weakening and death of the cell structure on the wall." *Id.* at 141. The *Domako* Court held that summary disposition as to cause in fact was proper because it was agreed that absent the hysterectomy, whether performed properly or not, the weakness of the wall would not have developed into a fistula. However, the plaintiffs did not claim that the surgery was not indicated, only that its performance was technically deficient and that this technical error, rather than simply the removal of the uterus itself, triggered the development of the fistula. The defendants argued that the surgery was performed properly, but the indicated removal of the uterus itself, not any technical error, caused the fistula.

Thus, there was a question of fact whether the alleged negligence, i.e., a technical error in surgery, was responsible for the fistula. As discussed above, no such dispute exists in this case about the cause of Jamar's Stevens-Johnson syndrome. The undisputed facts are that the reaction was caused by the carbamazepine that Watson prescribed.

Defendants also rely on this Court's opinion in *Dooley v St Joseph Mercy Hosp*, unpublished opinion per curiam of the Court of Appeals, issued July 7, 1998 (Docket No. 198024), in which the majority determined that there was a lack of proximate cause in a medical malpractice case. Although we need not consider it because it is nonbinding, MCR 7.215(C)(1), we find that there are several important distinctions between *Dooley* and the present case and do not believe it stands for the proposition suggested by defendants: that the mere fact that a reaction is rare vitiates proximate cause.

In *Dooley*, plaintiff Timothy Dooley suffered from a clotting disorder and was required to take anticoagulants for the rest of his life. The only two available blood-thinning medications were heparin and Coumadin. Timothy had twice been on heparin as an inpatient and took Coumadin as an outpatient and suffered no significant ill effects from either drug. When hospitalized for a third time, he was again switched from Coumadin to heparin during his in-patient stay. This time, however, he suffered an adrenal hemorrhage as a reaction to the heparin and lost adrenal function as a result. Defendants note that the *Dooley* opinion refers to the risk of adrenal hemorrhage as "rare" and suggest that this was why the *Dooley* majority concluded there was no proximate cause. This is inaccurate. The central point in *Dooley*'s proximate-cause analysis was that there was absolutely no difference in the risk of suffer-

ing an adrenal hemorrhage resulting from taking either Coumadin or heparin. Thus, while it was clear that Timothy's adrenal hemorrhage was caused by his taking a blood thinner, there was no evidence that it was connected to the change from Coumadin to heparin. The reaction was just as likely to have occurred if no change in medication had taken place. Thus, the plaintiffs failed to provide any evidence that the defendants could have foreseen that the change from Coumadin to heparin could result in an adrenal hemorrhage. By contrast, in the instant case, the risk of Stevens-Johnson syndrome was a direct result of the allegedly improper prescription of carbamazepine and the increased risk from not seeking immediate medical intervention in the event of experiencing side effects was a direct result of the alleged failure by Watson to properly counsel Jamar about side effects. Moreover, unlike the physician in *Dooley*, Watson did not make a decision resulting in a change from one drug to another, either of which bore the same risk, but made a decision between prescribing a drug that carried the risk and not prescribing it.

The proximate-cause analysis relevant to each of plaintiffs' theories of liability is not, however, identical. As noted above, plaintiffs have argued two distinct theories. First, that Watson failed to advise Jamar of the warning signs of Stevens-Johnson syndrome and what action to take should those warning signs occur. For this theory, the link between the alleged violation of the standard of care and the injury is direct, and we do not believe a reasonable juror could conclude otherwise. Indeed, one could fairly say that under this theory the issues of cause in fact and proximate cause collapse and are essentially indistinguishable. The allegation is that Watson failed to warn of exactly the condition that occurred and failed to advise how to address the exact condition that occurred.

Plaintiffs' other theory is that Watson negligently diagnosed a seizure disorder and that, as a result of that misdiagnosis, Jamar was given carbamazepine, a side effect of which led to Jamar's death. In the context of this theory, cause in fact and proximate cause do not *completely* collapse into each other because the alleged negligence does not necessarily cause injury; the prescribing of the medication constitutes an intermediate step without which the alleged misdiagnosis does not cause injury. Further, this intermediate step, i.e., prescribing the medication, is not alleged to be negligent in and of itself. Indeed, it appears to be undisputed that the prescription of carbamazepine for a seizure disorder is well within the standard of care, except perhaps in special circumstances involving a particular patient, and no such claim is made here. Rather, plaintiffs allege that Watson lacked sufficient diagnostic information to diagnose a seizure disorder and that, as a result of that negligent diagnosis, he prescribed a medication and Jamar had a rare and fatal reaction to that medication. We recognize that as the number of intermediate steps increase, and as those steps grow more attenuated from the final risk-creating event, proximate cause becomes more and more tenuous. There are cases in which that relationship is sufficiently distant that a court may properly hold that a reasonable juror could not find a proximate-cause relationship between the alleged negligence and the injury. And of course, in most cases, proximate cause will remain a question for the jury because reasonable minds may differ.

In this case, however, we conclude that the trial court properly concluded that a reasonable juror could not find a failure of proximate cause under the misdiagnosis theory, just as we concluded in the context of the

failure-to-advise theory. We so conclude because the direct undisputed cause of death was the prescribing of a drug, by Watson, which was a standard treatment in the face of a seizure diagnosis. The diagnosis was not merely an event in a chain of events that eventually led to the prescription; it was the final and apparently sole reason the medication was prescribed. While it is well recognized that an event need not be the sole or final cause of an injury to be a proximate cause of the injury, in this case, the alleged misdiagnosis was the sole cause and, if not the final cause of the injury, the final cause of the injury-causing prescription. In these circumstances, summary disposition on causation was appropriate. We do not see how a reasonable juror could conclude that an allegedly negligent diagnosis that was the sole cause for prescribing the injury-causing medication was not a proximate cause of the injury.

### IV. CONCLUSION

Because there was no dispute about causation in fact, no material dispute of fact, and reasonable jurors could not find a lack of proximate cause on the basis of these facts, we conclude that the trial court properly determined the issue of proximate causation as a matter of law. *Paddock*, 225 Mich App at 537. Furthermore, because the evidence is undisputed that, although Stevens-Johnson syndrome is rare, it is well known that it can occur from taking carbamazepine, and in this case did so occur, the trial court properly decided, as a matter of law, that Watson's alleged lack of giving advice regarding signs of a reaction was a proximate cause of Jamar's development of Stevens-Johnson syndrome. Finally, because the sole reason the medication was given was because of a diagnosis that plaintiffs assert was negligent and erroneous, the trial court

properly decided, as a matter of law, that the allegedly negligent misdiagnosis was a proximate cause of Jamar's development of the syndrome.

Although this forecloses causation arguments at trial, it does not mean that the rarity of this reaction to carbamazepine and the difficulty in determining which patients will suffer such reactions is irrelevant. It remains relevant to the issue of standard of care, and at trial defendants may present proofs and argument that these factors militate in favor of a finding that Watson did not violate the standard of care.

Affirmed.

BECKERING, J., concurred.

HOEKSTRA, P.J. (*dissenting*). In this medical malpractice action, this Court granted defendants leave to appeal the trial court's order granting summary disposition to plaintiffs on the issue of proximate or legal cause and denying defendants' cross-motion for summary disposition. Because I would conclude that reasonable persons could differ regarding whether the injuries of plaintiffs' decedent, Jamar Jones (hereafter Jones), were legally caused by the alleged negligence, I respectfully dissent.

In a medical malpractice action the plaintiff must establish proximate cause between the defendant's alleged breach of the standard of care and his or her injuries. *Teal v Prasad*, 283 Mich App 384, 391; 772 NW2d 57 (2009). " 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). Proximate cause is generally a question for the jury. *Lockridge v Oakwood Hosp*, 285 Mich App 678, 684; 777 NW2d 511 (2009). However, "[w]hen the facts bearing upon proximate cause are not in dispute and reasonable persons could

not differ about the application of the legal concept of proximate cause to those facts, the court determines the issue." *Paddock v Tuscola & S B R Co, Inc*, 225 Mich App 526, 537; 571 NW2d 564 (1997).

A court must first find that the defendant's actions were a cause in fact of the plaintiff's injuries before it may find that the actions of the defendant were a proximate or legal cause of the injuries. *Craig*, 471 Mich at 87. Cause in fact requires that "but for" the defendant's actions, the plaintiff's injuries would not have occurred. *Martin v Ledingham*, 282 Mich App 158, 161; 774 NW2d 328 (2009). The trial court granted summary disposition to plaintiffs on the issue of cause in fact. Defendants did not appeal this order in their application for leave to appeal; therefore, the issue of cause in fact is not before us. *Jones v Detroit Med Ctr*, unpublished order of the Court of Appeals, entered December 30, 2008 (Docket No. 288710); see also MCR 7.205(D)(4); *Detroit Free Press, Inc v Southfield*, 269 Mich App 275, 290; 713 NW2d 28 (2005).

At issue is legal or proximate cause. Legal causation involves "judg[ing] whether the plaintiff's injuries were too insignificantly related to or too remotely effected by the defendant's negligence." *Davis v Thornton*, 384 Mich 138, 145; 180 NW2d 11 (1970). "To find proximate cause, it must be determined that the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable." *Helmus v Dep't of Transp*, 238 Mich App 250, 256; 604 NW2d 793 (1999). Our Supreme Court has defined a proximate cause as "a foreseeable, natural, and probable cause of the plaintiff's injury and damages." *Kaiser v Allen*, 480 Mich 31, 38; 746 NW2d 92 (2008) (quotation marks and citation omitted).

The concept of foreseeability pervades any discussion of proximate cause. See, e.g., *id.*; *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997) ("To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . that the result of that conduct and intervening causes were foreseeable.") (quotation marks, citation, and alternation omitted); *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994) ("[L]egal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences."); *Nielsen v Henry H Stevens, Inc*, 368 Mich 216, 220-221; 118 NW2d 397 (1962) ("To make negligence the proximate cause of an injury, . . . an ordinary prudent person ought reasonably to have foreseen [that the injury] might probably occur as the result of his negligent act.").

However, our Supreme Court has instructed that in a case in which there is no intervening cause, and there is none alleged in the present case, the foreseeability of the plaintiff's injury is not to be used as a test to determine whether proximate cause exists. *McMillian v Vliet*, 422 Mich 570, 576-577; 374 NW2d 679 (1985); *Davis*, 384 Mich at 147.

> "It appears that the modern trend of judicial opinion is in favor of eliminating foreseeable consequences as a test of proximate cause, except where an independent, responsible, intervening cause is involved. The view is that once it is determined that a defendant was negligent, he is to be held responsible for injurious consequences of his negligent act or omission which occur naturally and directly, without reference to whether he anticipated, or reasonably might have foreseen such consequences. . . . There is no need for discussing proximate cause in a case where the negligence

of the defendant is not established, but when his negligence has been established, the proximate result and amount of recovery depend upon the evidence of direct sequences, and not upon defendant's foresight." [*Davis*, 384 Mich at 147, quoting 38 Am Jur, Negligence, §§ 58, 709, 710.]

Indeed, the Michigan Model Civil Jury Instructions define legal or proximate cause as "a natural and probable result of the negligent conduct." M Civ JI 15.01. The words "natural" and "probable," rather than legal terms of art, are words susceptible of ordinary comprehension and need not be defined for a jury. See *People v Martin*, 271 Mich App 280, 352-353; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). Accordingly, being instructed on proximate cause, jurors would afford the terms "natural" and "probable" their ordinary meanings. In the context of determining proximate cause, "natural" means "in accordance with the nature of things; to be expected," and "probable" means "likely to occur or prove true." *Random House Webster's College Dictionary* (1992).

In the complaint, plaintiffs alleged two distinct acts of negligence. First, plaintiffs claimed that Dr. Danny Watson breached the applicable standard of care by prescribing carbamazepine[1] on the basis of the limited personal medical history provided by Jamar Jones. According to plaintiffs, Watson should not have prescribed carbamazepine without performing additional diagnostic tests to confirm the preliminary diagnosis of a seizure disorder. Second, plaintiffs alleged that Watson breached the applicable standard of care by failing to inform Jones of the possibility of an allergic reaction,

---

[1] Watson prescribed Tegretol, but the prescription was filled with carbamazepine, the generic form of Tegretol. No allegation has been made, however, that any difference between the drugs is relevant to this case.

the signs of an allergic reaction, and the necessity to immediately seek medical attention for an allergic reaction.

In determining that reasonable minds could not differ that Watson's conduct was a proximate cause of Jones's injuries, the majority focuses on whether the injuries were foreseeable. For example, it reasons that, because Jones died as a result of Stevens-Johnson syndrome, which is a known side effect of taking carbamazepine, and because Jones contracted Stevens-Johnson syndrome from taking carbamazepine, which was prescribed by Watson, the injuries were foreseeable. Respectfully, I disagree with the approach taken by the majority. The issue is not simply whether reasonable minds cannot differ that a straight line can be drawn from point A, the defendant's alleged negligence, to point F, the plaintiff's injuries. Rather, for a plaintiff to prevail on the issue of proximate cause at the summary disposition stage, it must be shown that reasonable minds cannot differ that the injuries were the natural and probable consequence of the defendant's negligence. In other words, reasonable minds could not differ that the injuries were "expected" and "likely to occur" or on whether the injuries were too insignificantly related or too remotely affected by the alleged negligence. *Davis*, 384 Mich at 145. Further, consideration must also be given to whether the connection between the alleged negligence and the injuries is of such a nature that it is socially and economically desirable to hold the defendant liable. *Helmus*, 238 Mich App at 256.

Reviewing the trial court's decision de novo and the evidence in the light most favorable to defendants, *Lee v Detroit Med Ctr*, 285 Mich App 51, 58-59; 775 NW2d 326 (2009), I would conclude that this case presents

issues that must be resolved at trial. It is undisputed that Stevens-Johnson syndrome is a known, but very rare, side effect of taking carbamazepine. One expert testified that only one in a million of those who take carbamazepine develop Stevens-Johnson syndrome. In addition, there is no claim by plaintiffs that carbamazepine is not an anticonvulsant commonly prescribed for a seizure disorder. Under these circumstances, I am of the opinion that reasonable minds could differ regarding whether Jones's injuries were the natural and probable result of Watson's alleged negligence of failing to perform additional diagnostic tests to confirm the preliminary diagnosis of a seizure disorder. Admittedly, the link between Watson's alleged failure to warn Jones of an allergic reaction to carbamazepine and Jones's injuries is much closer than the link between the injuries and Watson's alleged failure to confirm the preliminary diagnosis. However, given the rarity of Stevens-Johnson syndrome, I believe that even on this claim it was within the province of the jury to determine whether the connection between Watson's alleged negligence and Jones's injuries was of such a nature that it is desirable to hold defendants liable. Accordingly, I would conclude that the trial court erred by granting summary disposition to plaintiffs on the issue of proximate cause.

Defendants also argue that it was error for the trial court to deny their cross-motion for summary disposition. They argue that because Stevens-Johnson syndrome is a rare and unpredictable side effect of taking carbamazepine, plaintiffs cannot establish that taking carbamazepine was a foreseeable, natural, and probable cause of Jones's death. Defendants rely primarily on *Dooley v St Joseph Mercy Hosp*, unpublished opinion per curiam of the Court of Appeals, issued July 7, 1998 (Docket No. 198024). I agree with the majority that

*Dooley* is factually distinguishable. In addition, the record shows that although Stevens-Johnson syndrome is a rare side effect, it is a known side effect. Consequently, reasonable minds could differ regarding whether it is a natural and probable consequence that, if a physician prescribes a medication with a known rare side effect, a patient will suffer the side effect. Therefore, I would also conclude that defendants are not entitled to summary disposition.